EX PARTE FRANKLIN JONES, SR.

No. A-7537. Decided January 27, 1960.
(331 S.W. 2d Series 202)

322

R. *Dean Moorhead, Tom H. Davis* and *L. Hamilton Lowe*, all of Austin, for relator.

MR. JUSTICE NORVELL delivered the opinion of the Court.

This is a contempt case which arose from an argument made by Franklin Jones, Esq., the attorney for the plaintiff in a common law negligence action. The case is presented here upon application for habeas corpus. There is no issue as to the trial court's jurisdiction of the person or subject matter and the only question is whether or not the court below had authority to render the particular judgment which is the subject of inquiry, that is, the order committing Jones for contempt. Ex parte Duncan, 42 Texas Cr. Rep. 661, 62 S.W. 758; Ex parte La Rocca, 154 Texas 618, 282 S.W. 2d 700.

The record discloses no heated and bitter controversy between judge and counsel and the case turns upon the wording and scope of an order made by the judge which sought to control the course of oral argument to a jury.

The case on trial at the time of the alleged contempt was one in which Larry Green, a minor, suing by next friend and a guardian ad litem, sought damages from Jack Walls for personal injuries sustained as the result of a collision between a motor scooter upon which he was riding as a passenger and an automobile driven by Jack Walls. Counsel for the defendant in arguing the case to the jury contended that Jack Walls was not negligent; that plaintiff's leg was broken because the motor scooter fell on it, and that no protection was provided on such scooter for the legs of a passenger thereon. The argument continued as follows:

"Gentlemen, are you going to take Jack Walls and penalize *him and take away from him the things he has earned and the*

*money he has worked for* because when he went and made a turn, someone ran into him? * * * Gentlemen, I say when a man gets out and saves it up and when he gets out and someone runs into him with a motor scooter or car that he shouldn't be taken into court and his money taken away from him when it was not his fault."

The order of commitment for contempt recites that an objection was made by Mr. Jones after the defendant's argument had been completed but "was by the Court overruled because the objection had not been made during the argument and the Court had no opportunity to stop such argument and instruct the jury not to consider the same." Jones then said that he intended to answer defendant's argument by telling the jury that "the insurance company would have to pay the judgment and not Jack Walls, the defendant." The Court then instructed counsel "not to make such remarks in his argument to the jury and not to advise the jury that the defendant, Jack Walls, was covered by liability insurance." Jones then told the judge that he intended to answer defendant's argument and later, during a recess, the judge again instructed Jones not to mention insurance, "and further that he should not skirt so near the word, 'insurance' or facts instant [sic] thereto as to leave the impression with the jury that the defendant, Jack Walls, was covered by liability insurance or say anything that would convey such impression to the jury."

By a statement in the form of a bill of exception signed and approved by the trial judge, it clearly appears that he recess "instruction" was neither pronounced from the bench, nor given in the course of a formal proceeding or in a conference held in chambers under the direction of the judge; but was wholly informal and resulted from a conversation between judge and counsel. It does not appear to have been an order of the court and hence may be disregarded.

Reverting to the order of commitment, it appears therefrom that in the plaintiff's closing argument, Mr. Jones said:

"I was surprised at [defendant's attorney] coming before this jury and saying, 'Don't penalize Jack Walls. He argued and argued, 'Don't take his earnings $80,000. Don't take from what he has built up $80,000. He knows in his heart it is improper. He knows that under the instructions of the Court you are not to consider how this judgment may fall, who pays it, how it is paid, or whether or not is is ever paid. He knows it is untrue

that Walls will have to pay $80,000 in this case. He knows it is untrue and he will not challenge me when I say that * * * . You are not concerned with who pays it or if it is ever paid. Let us worry about that. We will collect from the proper parties. It is not fair to say Jack Walls will have to pay it when they know it is not true."

The judge held that this argument violated the order above set out and fined Jones $100.00 and sentenced him to three days in jail. He was released from confinement by a writ of habeas corpus issued by this Court.

As counsel in his argument did not say that "an insurance company would have to pay the judgment and not Jack Walls," the question becomes one of whether or not counsel's argument advised "the jury that Jack Walls was covered by liability insurance."

This question must be answered in the light of the record before us. It cannot be answered in a vacuum. It is ordinarily immaterial whether one or all of the parties involved in an automobile collision carry indemnity insurance. Coleman Gay, 34 Texas Law Rev. 368, 370. The disclosure of either insurance coverage or no insurance coverage may, however, be prejudicial. Rojas v. Vuocolo, 142 Texas 152, 177 S.W. 2d 962; Kuntz v. Spence, Texas Com. App., 67 S.W. 2d 254; Gilmer v. Griffin, Texas Civ. App., 265 S.W. 2d 252, ref. n.r.e.; Gillespie v. Rossi, Texas Civ. App., 238 S.W. 2d 547, ref. n.r.e. It seems to have been the view of the district judge that plaintiff's remedy for counsel's remarks which allegedly indicated "no insurance," was to make timely objection and request an instruction to disregard, and, having failed to do this, counsel for plaintiff was not at liberty to answer the argument by challenging the "no insurance" inference. While the argument of defendant's attorney and the court's ruling with reference to the objection thereto are background incidents against which the validity of the contempt order must be determined, the question upon this hearing is not the correctness of this particular ruling. The judge possessed the authority to establish rules and give instructions governing the trial of causes and in the absence of a showing of nullity, it was counsel's duty to abide by them even though such instruction may have been erroneous. The trial judge's order that the jury be not advised that Walls had liabiliit insurance was effective, whether correct or not, and the controlling question is whether or not this order was violated.

1 The question is close. Perhaps the mere admonition and reminder that the court had instructed the jury that it was not proper for the jury to "consider how this judgment may fall, who pays it, how it is paid, or whether or not it is ever paid," might raise an inference that someone other than Walls would be called upon to pay the judgment and that such party might be an insurance company. However, it could hardly be maintained that a mere repetition of the court's charge or a paraphrasing thereof would violate the court's proscription against the mention of insurance. The court's order and direction to counsel was "not to make such remarks," that is, not to tell the jury that "the insurance company would have to pay the judgment," (which was not done) and "not to advise the jury that the defendant, Jack Walls, was covered by liability insurance." This order is to be strictly construed. While a court's authority to regulate trials and hence punish for contempt is broad and plenary, when the particular order is punitive rather than coercive in nature, it is not to be enlarged or broadened by construction and inference.

Contempts are often referred to as being either civil or criminal in nature. Ex parte Wolters, 64 Texas Cr. Rep. 238, 144 S.W. 531, although it seems that as a contempt case is not a true criminal proceeding, it would be more appropriate to classify such orders as being either coercive or punitive.

In ex parte Wolters, ex parte Gray, 64 Cr. Rep. 238, 144 S.W. 531, 1. c. 587, the terms civil and criminal were used with reference to contempt proceedings and defined as follows:

"A civil contempt consists in failing to do something which the contemnor is required to do by order of the court for the benefit or advantage of a party to the proceeding; while a criminal contempt is all these acts of disrespect to the court or its process — in fact all cases in which the state alone is interested in the enforcement of the order."

In Gompers v. Buck's Stove & R. Co., 221 U.S. 418, 31 Sup. Ct. 492, 55 L. ed. 797 (quoted in the Wolters case) it was said that:

"Contempts are neither wholly civil nor altogether criminal. And 'it may not always be easy to classify a particular act as belonging to either one of these two classes. It may partake of the characteristics of both.' Bessette v. W. B. Conkey Co. 194 U.S. 329, 48 L. ed. 1002, 24 Sup. Ct. Rep. 665 * * * . It is not the

fact of punishment, but rather its character and purpose, that often serve to distinguish between the two classes of cases. If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court * * * . But imprisonment for civil contempt is ordered where the defendant has refused to do an affirmative act required by the provisions of an order which, either in form or substance, was mandatory in its character. Imprisonment in such cases is not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do. The decree in such cases is that the defendant stand committed unless and until he performs the affirmative act required by the court's order * * * . If imprisoned, as aptly said in Re Nevitt, 54 C.C.A. 622, 117 Fed. 451, 'he carries the keys of his prison in his own pocket.' He can end the sentence and discharge himself at any moment by doing what he had previously refused to do. On the other hand, if the defendant does that which he has been commanded not to do, the disobedience is a thing accomplished. Imprisonment cannot undo or remedy what has been done, nor afford any compensation for the pecuniary injury caused by the disobedience. If the sentence is limited to imprisonment for a definite period, the defendant is furnished no key, and he cannot shorten the term by promising not to repeat the offense. Such imprisonment operates not as a remedy coercive in its nature, but solely as punishment for the completed act of disobedience."

In cases of coercive or civil contempt orders, there is generally little dispute as to whether the person charged has carried out a prior order of the court to take some affirmative action. In construing such orders a somewhat broad interpretation of the order of commitment may be safely indulged. In cases of coercive orders, the question of the validity of a commitment generally turns upon the question of the legality of the original directive order. Ex parte Henry, 147 Texas 315, 215 S.W. 2d 588.

In cases involving punitive orders the situation is different, particularly when the question presented arises on the order of commitment and there is doubt as to a violation of the prior directive order. Generally, an act has been done and cannot be undone. Insofar as an opposing party in litigation is concerned, the punitive order of the court directed against the allegedly offending party will avail him nothing. There only remains the

matter of vindicating the court's authority. The matter is quasi criminal and must be considered in that light.

While in this case, Mr. Jones stated to the court his intention to tell the jury that an insurance company would pay any judgment rendered in the case, such stated intention was not carried out in the face of the court's instruction to refrain from so doing. The argument relied upon as constituting advice to the jury that the defendant was covered by liability insurance consisted in statements that opposing counsel was not telling the truth when he said that the jury would take from Jack Walls "the things he has earned and the money he has worked for" and that the jury was not concerned with who paid the judgment or if it was ever paid.

As heretofore pointed out, an argument in accordance with the court's charge, which would have undoubtedly been proper, to the effect that the jury was not concerned with the immaterial matter of who would pay the judgment might leave an inference that an insurance company was a party at interest in the case. This, because of the statements theretofore made in argument by defendant's counsel. Much the same situation exists with reference to counsel's statements charging inaccuracy to defendant's attorney in referring to the taking of money which Jack Walls had worked for. The advice to the jury is based upon indirection and possible inference. Further there is no proof of a defiant and contemptuous attitude assumed by counsel concerning the court's authority. The following statement in relator's brief is supported by the record:

"[B]oth Judge and Lawyer conducted themselves with becoming dignity and an attitude toward each other worthy of the highest standards of the legal profession. The Judge, on the one hand, acted in the utmost good faith, unmoved by rancor or irritation. Believing sincerely that an order he had made had been disobeyed by Relator, he felt constrained in the proper performance of his duty as a judge, to mete out a punishment provided by law for such transgressions. The Lawyer, on the other hand, believing it to be his duty to the client who had entrusted him with his suit, to challenge what he considered to be a false statement made to the jury by his adversary, defendant's counsel, made an argument to the jury which he believed to be proper and in keeping with the rules of law governing cases of the sort he was trying and to be well within the limitations put on such argument by the Judge."

From the circumstances above outlined and the rules of law referred to we are of the opinion that the order of commitment is lacking in validity and the relator must be discharged. Ex parte Morris, 147 Texas 140, 215 S.W. 2d 598; Ex parte White, 154 Texas 126, 274 S.W. 2d 542.

It is accordingly so ordered.

Opinion delivered January 27, 1960.