EX PARTE JOE CONGER
EX PARTE E. K. BUFORD

Nos. A-8877, A-8878. Decided June 6, 1962
357 S.W. 2d 740

506

ASSOCIATE JUSTICES SMITH and HAMILTON dissented.

*Turpin, Kerr, Smith & Dyer,* Midland, for relator.

*Clyde Vinson,* San Angelo, for respondent.

ORIGINAL HABEAS CORPUS

JUSTICE CULVER delivered the opinion of the Court.

Joe Conger and E. K. Buford, County Commissioners of Upton County, were found guilty of having violated the terms of a permanent injunction and the writ issued in pursuance thereof and served upon them which commanded Upton County, its agents, servants, officers and employees to desist and refrain from using the road machinery and other equipment of Upton County for the benefit of private persons by blading and scraping off lots, filling in lots or hauling dirt, sand, gravel, or caliche or using such road equipment for the benefit of private persons or doing any form of soil or dirt work on private property. The trial judge, having found Mr. Buford guilty of three separate violations, imposed cumulative sentences of three days for each of the first two violations hereinafter discussed and twelve hours

for the third. Commissioner Conger was ordered confined twelve hours for his single violation.

Relators first say that the injunction order was not violated for the reason that the work which forms the basis of the charges against them was not carried out for the benefit of private persons, wherefore they should stand discharged from the penalties inflicted upon them by the District Judge.

Commissioner Buford was charged with doing work with county equipment on three tracts of land owned by private parties near or in the town of McCamey. As to the first alleged violation the Commissioner testified that he had received a request from some people in the neighborhood to "clean up" a lot so that the children in the neighborhood would have a playground and that since he considered this was for the benefit of all the members of the community he scraped off the weeds and hauled them away. This action was taken without the knowledge or consent of the landowner.

Secondly, the Commissioner performed similar work on a tract owned by William Truesdale. Mr. Truesdale told Commissioner Buford that he was thinking about putting a house on his lots and requested the Commissioner to "blade" them off. The Commissioner replied that he had received requests from several people in that vicinity to clear off the brush on the corner of these lots because it formed a traffic hazard at the intersection of two roads. He then proceeded to blade and clean off the lots and hauled away the trash with county equipment.

The third charge concerned the act of a county employee in Commissioner Buford's precinct who complied with the request of a homeowner to clear away a strip of weeds on a lot next to his property which he thought to be a fire hazard. In this instance while no express authority was given, the court found that the work was done with the Commissioner's implied consent because he had allowed the employee to use county equipment for this same character of work on a previous occasion. We have not found in the statement of facts any testimony that would support such a finding of implied consent.

In our opinion the clearing and scraping off a privately owned lot for the use as a playground of all the children of the community is not "for the benefit of private persons" in contemplation of this injunctive order, but is rather for a public use or public purpose. No all-inclusive judicial definition of

that term has been attempted by the courts, but each case is to be determined by its own peculiar circumstances. Davis v. City of Lubbock, 160 Texas 38, 326 S.W. 2d 699. While there are two views as to what constitutes "a public use", one being more restrictive than the other, nevertheless where there exists the direct use or right of use of the utility on the part of the public or even some limited portion of the public, all agree it is a public use. 73 C.J.S., Public, p. 280.

We conclude therefore that the order in so far as it holds Commissioner Buford in contempt of court in respect to the first and third charges, cannot stand and must be set aside.

We are unable to say, however, that there is no evidence to support the court's finding that Commissioner Buford did violate the injunction by scraping off and removing the brush from the Truesdale lots. The work was actually done at the request of the landowner and for his benefit, who gave as a reason for the request that he was thinking about placing a house on the property which he thereafter actually did do. There is at least some conflict in the testimony about the height of the brush and the extent of the traffic hazard it may have occasioned. Taking all the testimony into consideration we cannot say that the court was unjustified in finding that the work was done for the benefit of a private person, and therefore the contempt order is not void.

The complaint against Commissioner Conger was that by implied consent he allowed county-owned machinery to be used for the benefit of private parties in blading and scraping off two lots in the town of McCamey so that the members of a church would have a place to park their cars while attending religious services. The employee who did this work had been instructed by Commissioner Conger not to use the county equipment on private property. He testified, however, that "I had had permission to use the equipment on the lands wherein the Lions Club had given the church permission, and I just presumed that if it was all right for me to use them for a parking area on one it would be all right to use it on another lot for the same purposes." Work performed on privately owned property to furnish parking facilities for the use of members in attending services at their church is not for a public use or purpose, whether that work consists in scraping off weeds or paving the lot or excavating for a foundation. The matter does not turn on the extent of character of the work, but rather for whose benefit it was performed. A denominational church is a private institution,

privately owned and operated. While the building and maintenance of religious institutions are in the public interest and may be said to promote the public welfare they lie without the domain of public uses and purposes. Smith v. Smythe, 90 N.E. 1121, 197 N.Y. 457. To constitute "public use" all persons must have an equal right in respect to the property and it must be in common and on the same terms no matter that only a few in number may avail themselves of it. Palmyra Telephone Co. v. Modesto Telephone Co., 167 N.E. 860, 336 Ill. 158. The only point is whether the Commissioner had impliedly consented and we are of the opinion that there is testimony to support the finding of the court in that respect.

■ In the second place relators say that even if the injunction order was valid nonetheless it was not a contemptuous violation and for that reason they should be discharged. The argument is that each of the relators thought that what he did and what use was made of the county equipment was for the benefit of the public; that neither intended to do any work "for the benefit of private persons" and both acted in good faith in their respective acts. Relators further say that there was a reasonable basis for the belief that the use of the equipment was for a public use and not for the benefit of private persons and that the lack of an intentional disrespect should operate as a purge of the contempt charges. For this they cite Herring v. Houston National Exchange Bank, 113 Texas 337, 255 S.W. 1097. That was an original action in the Supreme Court to have certain parties adjudged in contempt of that court and not a habeas corpus proceeding. In that case the Supreme Court was the trier of the facts and acted within its own discretionary powers. While lack of intentional disrespect may be considered in mitigation that is a matter for the consideration of the trial court.

■ What we have here is tantamount to a collateral attack on the contempt judgment and we may order the relators released only where the judgment is void. We do not have jurisdiction to weigh the evidence or to consider matters that might be plead by way of mitigation. Ex Parte Testard, 101 Texas 250, 106 S.W. 319; Ex Parte Helms, 152 Texas 480, 259 S.W. 2d 184.

Relators assert that the burden rested upon the party who preferred these charges to prove not only a violation of the court's order but also a defiant and contemptuous attitude "beyond a reasonable doubt" and for this proposition they rely upon Ex Parte Jones, 160 Texas 321, 331 S.W. 2d 202. We do not agree with that appraisal. In the Jones case an attorney

was held in contempt for making an argument to the jury which the court construed as being in violation of a ruling theretofore made. In that case we said:

"The record discloses no heated and bitter controversy between judge and counsel and the case turns upon the wording and scope of an order made by the judge which sought to control the course of oral argument to a jury."

In summary our holding was based upon the conclusion that the court's order was not directly violated and that the particular order "is not to be enlarged or broadened by construction and inference" and for that reason the relator was discharged. We think that decision has little bearing upon the situation here.

In Ex Parte White, 154 Texas 126, 274 S.W. 2d 542, the point before the court was said to be whether he has "contemptuously" disobeyed a court order. However, the word as used there, carried no more than the connotation of "knowingly or wilfully". The relator was discharged for the reason that under the evidence at the time of the issuance of the order it was beyond his power to comply. Therefore he had not "contemptuously" disobeyed. In this case it is admitted that the relators had full knowledge of the injunctive order and the reasons for its issuance. Russell Arnold who was engaged in hauling, moving dirt and in other construction work in Upton County, filed his petition against the four County Commissioners and Upton County alleging that the Commissioners had been cleaning off and filling in lots, hauling for private use and otherwise using county equipment for the benefit of private persons and thus materially injuring his business and causing a substantial loss of patronage and profits. It appeared that thereafter the parties agreed that Upton County should be enjoined but that the cause be dismissed as to the four Commissioners and also agreed upon the wording of the order as drafted and entered.

■ While individual members of the County Commissioners Court have no authority to bind the county by their separate actions, Canales v. Laughlin, 147 Texas 169, 214 S.W. 451, nevertheless it is no valid defense in this case to say that the acts of the two Commissioners detailed herein were not official acts ordered by the Commissioners Court. The writ restrained acts of this character, both official and otherwise, prohibiting not only Upton County but its agents, servants, officers and employees from doing the things complained of. That this was the necessary effect of the injunction also, see Rule 683, Texas Rules of Civil

Procedure. In that respect the trial court concluded as a matter of law and properly so that:

"That the Commissioners of Precincts 4 and 3 while acting without specific orders entered on the Minutes of the Commissioners Court of Upton County, Texas, directing that such acts be performed, by implied consent acted in their official capacity as County Commissioners, their having heretofore defended the basic action upon which said injunction was issued in that such acts had not been as individuals but in their official capacity, cannot now come before this Court and plead that such similar act or acts were in their individual capacities and not their official capacities and in effect evade the orders, judgments, decrees and injunctions of this Court."

It is therefore ordered that the relators be remanded to the sheriff of Upton County to be by him confined in accordance with the order of the District Court as modified by this opinion, and that relators pay all costs of this proceeding.

Opinion delivered June 6, 1962.

ASSOCIATE JUSTICE SMITH, dissenting.

I respectfully dissent. The majority assumes that the injunction granted in the case of Russell Arnold v. E. K. Buford, restraining Upton County, Texas, from using road machinery or other equipment belonging to the county for the benefit of private persons, etc., is based upon a judgment against Buford and Conger. The terms of the judgment convince me that this assumption is unfounded. The judgment provides:

"It further appearing to the Court that the attorneys for all parties have conferred and have reached an amicable agreement in settlement of said cause, to the effect that Upton County should itself be enjoined but that none of the said Commissioners should be personally enjoined, and it appearing to the Court that such a provision is right, just and equitable, it is accordingly ORDERED, ADJUDGED and DECREED that the above entitled and numbered cause be, and the same is hereby, dismissed as to E. K. Buford, Joe Conger, H. Wheeler, and Tommy D. Workman, the said Commissioners of Upton County, Texas; * * *."

Following the above paragraph dismissing Buford and Conger from the case appears the decretal portion of the judgment

wherein Upton County was restrained from using the road machinery for the benefit of private persons, but no such order is made relative to Buford and Conger in the decretal portion of the judgment.

It is true that the writ of injunction signed by the Clerk recites that "* * * Upton County, its agents, servants, officers and employees" are commanded to desist and refrain from using the road machinery for the benefit of private persons. This, however, is no part of the judgment of the Court and cannot be read into the judgment by implication or otherwise, especially in view of the fact that the judgment shows on its face that the controversy between the plaintiff, Arnold, and the defendants, Buford and Conger, was settled and compromised and these particular defendants were dismissed from the suit.

Under the circumstances, the judgment of contempt was void, as the court was without jurisdiction to enter the order of contempt against the Relators. I am not unmindful of the fact that a proceeding of this nature constitutes a collateral attack upon the judgment of the trial court and that in order for the contempt judgment to be subject to collateral attack it must be absolutely void. Ex Parte La Rocca, 154 Texas 618, 282 S.W. 2d 700. I insist, however, that contempt proceedings in this case will never be in order until there exists a valid judgment restraining these Relators from using road machinery for the benefit of private persons.

The settlement, compromise, and dismissal by judgment is forever a bar to any proceedings, contempt or otherwise, against Buford and Conger growing out of that particular suit. The judgment in that case cannot be used as a basis for the contempt action here. This does not mean, however, that proceedings can never be instituted against Buford and Conger. The judgment in the case of Arnold v. Buford is not a bar to the institution of a new suit under new facts. Buford and Conger may be proceeded against under a state of facts giving rise to a new cause of action just as though the judgment in Arnold v. Buford had never been written. See Bute v. Brainerd, 93 Texas 137, 53 S.W. 1017. Buford and Conger can be proceeded against as if the former suit of Arnold v. Buford had never been brought. The new facts pertaining to Buford and Conger can be tried in the new suit. The majority of this Court has rendered a judgment against both Buford and Conger without a hearing on these facts in the trial court. In other words, it has never been judicially determined in the trial court that an injunction was in order.

Buford and Conger have not had their day in court. They are being deprived of their liberty under a void order.

Since the majority has passed upon the facts, I will say that in my opinion Relators are not guilty of contempt. Each had the authority to do and perform their duties. It is true no suit was brought by the county to remove the hazardous condition of the lot, but Buford removed the brush, etc., which created the hazard for the protection and safety of the general public.

Conger is not guilty, because the record clearly shows that Conger instructed the employees not to use road machinery and equipment for private purposes.

Buford and Conger should be held not guilty of contempt and they and their sureties should be discharged from further liability on the bonds filed therein.

ASSOCIATE JUSTICE HAMILTON joins in the dissent.

Opinion delivered June 6, 1962.