

# The Attorney General of Texas

August 16, 1983

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201-4709
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002-6986
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite 8
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable William A. Meitzen
Criminal District Attorney
Fort Bend County Courthouse
Richmond, Texas    77469

Opinion No.  JM-57

Re:  Whether a county sheriff
or constable may contract with
a private homeowners associa-
tion to furnish it law enforce-
ment services

Dear Mr. Meitzen:

You have requested our opinion concerning the authority of a
county to contract with private entities to furnish certified peace
officer law enforcement protection in return for monetary payments to
the county.  Over the course of the years this arrangement has been
the subject of opinions from this office and Texas courts, and it is
our understanding that such a practice in Texas is not uncommon.

There is no statute extant which purports to authorize such
contracts, nor a constitutional provision at present upon which such a
statute could be based.  Article III, section 52f, of the Texas
Constitution, adopted in 1980, allows counties having a population of
5,000 or less to construct and maintain private roads for a reasonable
charge, but no other constitutional provision of which we are aware
permits contracts of this nature.

The police power of the state is a fundamental attribute of
sovereignty, and the Texas Constitution requires that the powers of
government be confided only to bodies of "magistracy."  Tex. Const.
art. II, §1.  See City of Dallas v. Smith, 107 S.W.2d 872 (Tex. 1937).
In our opinion, county officers may not subject their law enforcement
responsibilities and functions to private control or direction.  See
72 Am. Jur. 2d States, Territories and Dependencies, §1, at 406 (1974)
(duties of the state).

A sheriff, constable, or deputy is a peace officer whose duty it
is "to preserve the peace within his jurisdiction."  Code Crim. Proc.
arts. 2.12, 2.13.  Peace officers must be certified by the state.
V.T.C.S. art. 4413(29aa).  They are vested with privileged authority
to make arrests, article 14.03 of the Code of Criminal Procedure, and
to possess handguns, sections 46.02 and 46.03 of the Penal Code.

You specifically ask whether a county sheriff or constable can
contract, through the commissioners court, with a private homeowners

association to furnish law enforcement services to the association whose geographical area is not within the corporate limits of any municipality. You have furnished us a copy of the contract between Fort Bend County and the Sugar Creek Homes Association, a Texas corporation (whose property may be nominally taxed, section 23.18 of the Tax Code; but see Attorney General Opinion H-1220 (1978) (provision unconstitutional)). The contract was executed by the commissioners court and the president of the association. The contract calls for the appointment and assignment of four deputy constables who shall "devote substantially all of their working time to the area known as Sugar Creek" and whose "salaries and expenses" will be paid by the association to the county. The agreement calls for twenty-four hour protection. The contract provides for payments to the county in the aggregate amount of $120,000 over the twelve month term of the agreement. It is agreed that the deputies shall be under the supervision and control of the constable. The deputies are required to remain on patrol in Sugar Creek except in instances of "emergencies." If the full number of deputies are not assigned, the association is entitled to a pro rata refund from the county. There are no provisions in the agreement concerning liability or indemnification in the event of litigation.

Although the submitted contract pertains only to the office of constable, our answer and discussion will also apply to the sheriff's office, as in your question. For purposes of this opinion we will assume that any activity by the specially assigned peace officer would be conduct legitimately pursued by a law enforcement officer in the normal course of his duty to preserve the peace. That is, we assume that the officers are pursuing a proper public purpose in their acts.

While the contract states that it shall not "obligate the constable" we believe the agreement as a whole interjects an impermissible influence and has a substantial and real effect on the exercise of discretion as to the deployment of deputy peace officers by the constable, or the sheriff, as the case may be. The court in Weber v. City of Sachse, 591 S.W.2d 563 (Tex. Civ. App. - Dallas 1979, no writ), discussed the sheriff's law enforcement discretion regarding deployment of his deputies. The case concerned a suit by incorporated municipalities seeking a writ of mandamus compelling the sheriff to patrol within their boundaries. The county had elected to patrol only the unincorporated areas of the county. The court held that this was a proper exercise of the county's discretionary authority as to the level of law enforcement protection and that the sheriff could not be compelled to provide patrols as requested because

> his decisions as to the deployment of law enforcement officers within the county are left to his discretion and judgment since this matter is not specifically prescribed by law.

Id. at 567. While we certainly agree with the court's holding that a district court cannot interfere with the exercise of discretion by the county regarding law enforcement, we do not believe that such discretion sanctions the execution of a legally impermissible contract.

The court in Murray v. Harris, 112 S.W.2d 1091 (Tex. Civ. App. – Amarillo 1938, writ dism'd), held that the county sheriff could not contract away his discretion to appoint and discharge his deputies at his pleasure as authorized by article 6869, V.T.C.S. The court held that an employment contract with a deputy guaranteeing employment for the duration of the sheriff's term was void and unenforceable. The court stated that the effect of the contract, signed by the sheriff, would be

> to abrogate and abandon the important option
> placed in him by law to terminate the employment
> at his will or pleasure.

Id. at 1093.

It is our opinion that a county sheriff or constable may not, through a contract executed by the commissioners court, contract away or restrict his discretionary duty regarding the appointment, assignment, and deployment of deputy peace officers. We believe that the agreement to provide law enforcement protection, an obvious governmental function and police power of the county, is void as contracting away such authority. The court in Clear Lake City Water Authority v. Clear Lake Utilities Company, 549 S.W.2d 385 (Tex. 1977), held that a water district could not

> by contract or otherwise, bind itself in such a
> way as to restrict its free exercise of [its]
> governmental powers.

Id. at 391. See also Texas Power & Light Company v. City of Garland, 431 S.W.2d 511 (Tex. 1968) (contracting away police power); Pittman v. City of Amarillo, 598 S.W.2d 941 (Tex. Civ. App. – Amarillo 1980, writ ref'd n.r.e.); Fidelity Land & Trust Company of Texas v. City of West University Place, 496 S.W.2d 116 (Tex. Civ. App. – Houston [14th Dist.] 1973, writ ref'd n.r.e.) (sewer easements – surrender of governmental power by contract); Banker v. Jefferson County Water Control and Improvement District, 277 S.W.2d 130 (Tex. Civ. App. – Beaumont 1955, writ ref'd n.r.e.) (contract abdicating police power of water district void and illegal); City of Belleview v. Belleview Fire Fighters, Inc., 367 So.2d 1086 (Fla. Dist. Ct. App. [1st Dist.] 1979) (contract taking discretion in fire fighters policy away from municipal corporation rescinded).

Several courts and attorneys general have discussed "law enforcement by contract" schemes but have not discussed their basic

legality.  The case of Hudson v. St. Louis Southwestern Railway Company of Texas, 293 S.W. 811 (Tex. Comm'n App. 1927, holding approved) concerned a wrongful death action which arose as a result of a state ranger being assigned to protect the property of the railway company.  The railway company had applied to the governor for the special appointment of state rangers during a labor strike.  It was agreed that the company would pay the salaries and expenses of the peace officers.  There was no discussion in the case as to the legality of such arrangement; the court simply held that the ranger was acting within an employment capacity of the company thereby imposing liability on the company for wrongful death.  The holding and the facts in Lancaster v. Carter, 255 S.W. 392 (Tex. 1923) are similar to Hudson.  Deputy sheriffs had been appointed and assigned to guard the property of a railroad company.  The sheriff admitted that he exercised no supervision or had any knowledge of the acts of the deputy.  The deputy was compensated exclusively and directly by the railroad company.  The court held the deputy to be an employee of the company and the latter liable for the wrongful death by the deputy. Furthermore, the court stated that

> [t]he sheriff had no authority to appoint or
> detail a deputy to guard and watch the property of
> the railroad, except in specific cases of
> threatened injury.

Id. at 393.  The court in Texas and N.O.R. Company v. Parsons, 113 S.W. 914 (Tex. 1908), similarly held that a deputy peace officer assigned to protect railroad premises was acting as an employee of the company, making the latter liable for the wrongful death at issue in the case, and that the sheriff had no authority to make such an appointment.

In Attorney General Opinion O-4338 (1942), this office concluded that Humble Oil and Refining Company could not hire a deputy sheriff to guard its oil storage tanks and other property.  The company had agreed to pay the county the monthly salary of the deputy assigned. In the opinion it was stated:

> Under the facts as submitted in your letter, this
> deputy is to be assigned to guard the oil storage
> plants and oil wells of a private concern.  He
> will of necessity have to devote his entire time
> to this task, and will not be available for
> assignment elsewhere.  He will not be subject to
> the orders of the sheriff nor will he be
> responsible to him.  Under these circumstances, it
> is our opinion that the sheriff would have no
> authority or legal right to issue a commission to
> a person to perform such services.

Id. at 4.

In Attorney General Opinion O-207 (1939), this office determined that the sheriff could not issue commissions to, that is, deputize, persons acting as "watchmen, poundmasters, and others whose business requires them to carry large sums of money on their persons." The sheriff may not appoint a special deputy to patrol an annual county celebration without complying with the certification requirements for peace officers, Attorney General Opinion H-1002 (1977), nor may the sheriff appoint "special deputies" who are assigned no official duties. See Attorney General Opinion V-699 (1948).

The appeals court in Bounty Ballroom v. Bain, 211 S.W.2d 248 (Tex. Civ. App. - Amarillo 1948, writ ref'd n.r.e.), gave tacit approval of law enforcement by contract arrangements. The city of Dallas, a home rule city, had passed an ordinance permitting dance hall operators to request the assignment of a "special police officer" to the business premises for which the owner paid the city an established fee. The power of supervision and assignment of the special officers remained, under the ordinance, with the city's chief of police. Also, under the "Dance Hall Code" the wages of the special officers came strictly from the fees received from the various business establishments. A peace officer engaged was involved in a scuffle while evicting a patron at the dance hall, inflicting injuries for which the patron sued the owners and the officer. The issue and holding of the case concerned whether the owners were liable under the master-servant doctrine, or whether the officer was pursuing his duties as a public official for which the owners are not liable. We believe that any language in the opinion approving manner of contract is dicta and contrary to authorities herein relating specifically to county peace officers; such authority to contract was not litigated in the case nor essential to its holding. Furthermore, we believe the case is inapplicable because it pertained to the authority of a home rule city rather than to a county.

The deputy is paid by the county, at least facially. We believe it is not necessary to discuss the basic rule of law that a public officer may not accept compensation from third parties or private sources for the performance of official duties. Kasling v. Morris, 9 S.W. 739, 740 (Tex. 1888). See Penal Code §36.02 (bribery); Attorney General Opinion C-661 (1966) (county sheriff's authority to contract with municipality); Attorney General Opinion O-773 (1939) (deputy sheriff may not become employed by dance hall and accept compensation). Attorney General Opinion O-1565 (1939) also concluded that a deputy constable may not be employed and paid by a tavern to enforce the law. The opinion stated:

> a constable only has the legal right to accept compensation prescribed for him by law and that he may not legally accept compensation from private sources for patrolling and performing his duties of enforcing the law.

Id. at 6.

Because the agreement in question provides that it shall not "obligate" the county and that the assigned officers remain under the supervision of the elected peace officer, and thereby, arguably, making inapplicable the authorities discussed above prohibiting contracting away such responsibilities, we believe it is necessary to discuss public policy and constitutional questions. The appearance of impropriety, the potential for conflicts of interest, and the potential for less than impartial enforcement of the law, are matters for serious consideration when law enforcement officers know that their positions are supported and funded voluntarily by persons they police. Furthermore, we believe the bare cost items of reimbursement to the county -- automobile expenses and salaries -- do not adequately cover the full value received by the association in the purchase of the county's name, special authority, and the "good will," as it were, of the county. Such aspects of official imprimatur are of value and are conveyed gratis to a defined group of individuals in violation of article III, section 52, of the Texas Constitution, which denies political subdivisions the authority "to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever." Although we are imputing no improper motives to those wishing to secure law enforcement protection in this manner, we believe that permitting a group of economically able persons to purchase additional protection is fraught with potential for abuse and is an unorthodox manner of conducting the affairs of government. The proper manner with which to increase the level of law enforcement protection offered by the county is either an increase in county taxes, a reallocation by the commissioners court of the available county revenue, or municipal incorporation. We believe that when an area within the unincorporated portion of the county has such a pressing need for the law enforcement protection contemplated by the agreement, there probably exists sufficient reasons for the territory to incorporate and create their own law enforcement agency. The parties may then clearly be entitled to contract for law enforcement protection under the Interlocal Cooperation Act, article 4413 (32c), or article 999b, V.T.C.S., which pertains to interlocal assistance among law enforcement officers. Even without incorporation, there is adequate provision in state law permitting private concerns to hire security services. The Private Investigators and Private Security Agencies Act, article 4413(29bb), V.T.C.S., permits a person, association, or corporation to employ the services of a "guard company" to provide a "private watchman, guard or street patrol" to protect private property and protect persons from bodily harm. Id. §2(4). These considerations, in addition to restriction of discretion discussed above, in our opinion render the agreement in question here void as against public policy and unconstitutional. See Hazelwood v. Mandrell Industries Company, Ltd., 596 S.W.2d 204 (Tex. Civ. App. - Houston [1st Dist.] 1980, writ ref'd n.r.e.); Locomotive Engineers and Conductors Mutual Protective Association v. Bush, 576 S.W.2d 887 (Tex.

Civ. App. - Tyler 1979, no writ); Restatement (Second) of Contracts §179 (1979).

The funding for county law enforcement protection comes from the general fund of the county which is generated by tax revenues and other legitimate county fees and charges. The commissioners court is vested with discretion with regard to the allocation of this public money for law enforcement and has the duty to adequately fund the sheriff's office. See V.T.C.S. arts. 3899, 3899b, 3902, 3912k; Vondy v. Commissioners Court of Uvalde, 620 S.W.2d 104 (Tex. 1981) (commissioners court required to set reasonable salary for constable); cf. Attorney General Opinion H-1190 (1978) (duty to fund county jail).

In our opinion, neither a county, a sheriff, nor a constable is empowered to enter into a contract with private entities or homeowners to furnish them special law enforcement protection unavailable to others. All such agreements are void and unenforceable. Cf. Attorney General Opinion MW-236 (1980) (deputy sheriff acting as independent contractor during off-duty hours). Although protection not available to others might be furnished to areas or persons in the exercise of a reasonable discretion based on general public need, Weber v. City of Sachse, supra, county officials are not at liberty to base such decisions on the wishes of private groups to have public equipment and personnel specially devoted to their interests, or upon the willingness of such groups to pay therefor. See Ex parte Conger, 357 S.W.2d 740 (Tex. 1962).

## S U M M A R Y

A county may not contract with a homeowners association to provide law enforcement protection by county peace officers.

Very truly yours

J I M   M A T T O X
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by David Brooks
Assistant Attorney General