# NO. 12-08-00214-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE:* | § | |
| *WILLIAM L. WHITE,* | § | *ORIGINAL PROCEEDING* |
| *RELATOR* | § | |

### *MEMORANDUM OPINION*

William L. White brings this original mandamus proceeding complaining of the trial court's order finding him in contempt for violating certain provisions of a divorce decree.[1] We conditionally grant the petition for writ of mandamus in part and deny it in part.

### BACKGROUND

William L. White and Catherine Michelle Meshell (formerly White) were divorced on December 29, 2005. They are the parents of one child, W.C.W., born May 14, 2004. Both parents were appointed joint managing conservators of the child, although William was given the exclusive right to designate the primary residence of the child. In the standard possession order, Catherine was given possession and access to W.C.W. on the first, third, and fifth Friday of each month and on Thursday of each week. William was ordered to surrender W.C.W. to Catherine at his residence at the beginning of her possession regardless of the distance between the residence of "a parent and the child." If the child was not in school, Catherine was ordered to pick the child up at William's residence at 3:30 p.m., and William was ordered to surrender the child to Catherine at his residence

---

[1] The real party in interest is Catherine Michelle Meshell (formerly White). The respondent is the Honorable Bascom W. Bentley, III, Judge of the 369th Judicial District Court of Anderson County, Texas.

at 3:30 p.m.

Additionally, each party was ordered to notify each other party, the trial court, and the state registry of any change in the party's current residence address, mailing address, home telephone number, name of employer, address of employment, driver's license number, and work telephone number. Each party was ordered to give notice of an intended change in any of the required information on or before the sixtieth day before the intended change. If the party did not know or could not have known of the change in sufficient time, notice was ordered to be given on or before the fifth day after the date the party knew of the change. The order stated that failure by a party to provide the required information to the other party, the court, or the state registry might result in further litigation to enforce the order, including contempt of court.

In a division of the debts of the spouses, the trial court ordered William to pay, as a part of the division of the estate of the parties, the balance due, including principal, interest, and all other charges, on the promissory note payable to Chrysler Financial and given as part of the purchase price of and secured by a lien on a Ford truck awarded to Catherine. In 2006, Catherine filed a motion for enforcement of possession or access, alleging that William fraudulently notified her and the trial court on March 31, 2006, that his residence had changed to El Paso, Texas, when he continued to reside in Palestine, Texas. She also alleged that William had failed to make payments on the Ford truck from February 2006 through July 2006, that the note was in arrears, and that the Ford truck was in danger of repossession.

After a hearing on Catherine's motion, the trial court made the following findings:

1.    that William's residence is and was in Palestine, Texas;

2.    that William fraudulently notified the trial court and Catherine that his residence had changed to El Paso, Texas;

3.    that William failed to follow the court's order and surrender the child at his residence in Palestine, Texas on seven dates beginning in April 2006;

4.    that enforcement of the court's order was and is necessary to ensure the child's physical or emotional health or welfare; and

5.    that William failed to make payments on the Ford truck beginning February 2006 through July 2006, that the note was in arrears, and that the truck was repossessed.

2

The trial court then found William in contempt for each separate violation and ordered him confined in the county jail for thirty days. However, the trial court suspended William's commitment on the condition that pickup and delivery of W.C.W. be confined to Anderson County, Texas, that William pay Catherine $12,000 in attorney's fees, and that William pay Catherine $16,800 for the loss resulting from repossession of the Ford truck. William paid the ordered sums into the court's registry pending the outcome of this proceeding. This original proceeding followed.

## AVAILABILITY OF MANDAMUS

Mandamus is intended to be an extraordinary remedy, available only in limited circumstances. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). It is available only to correct a clear abuse of discretion when there is no adequate remedy by appeal. *In re J.D. Edwards World Solutions Co.*, 87 S.W.3d 546, 549 (Tex. 2002). A trial court clearly abuses its discretion if "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Walker*, 827 S.W.2d at 839 (quoting *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985)). In other words, the relator must establish that the trial court could reasonably have reached only one decision. *Id.* at 840. Mandamus is proper when a trial court issues an order beyond its jurisdiction. *In re Sw. Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex. 2000). Moreover, contempt orders are not appealable. *Ex parte Rose*, 704 S.W.2d 751, 752 n.1 (Tex. Crim. App. 1984). And contempt orders that do not involve confinement cannot be reviewed by writ of habeas corpus. *In re Long*, 984 S.W.2d 623, 625 (Tex. 1999) (orig. proceeding). Here, the trial court's order for confinement has been suspended. Consequently, the only possible relief is a writ of mandamus. *Id.*

## FAILURE TO MAKE INSTALLMENT PAYMENTS

As part of his first issue, William argues that the portion of the trial court's order holding him in contempt for failing to make payments on a Ford truck awarded to Catherine in the underlying divorce decree is void. More specifically, he contends that the trial court's order violates the Texas constitutional provision against imprisonment for debt. The Texas Constitution provides that "[n]o person shall ever be imprisoned for debt." TEX. CONST. art. I, § 18. A commitment order that

3

violates the Texas Constitution is beyond a court's power and is void. ***In re Henry***, 154 S.W.3d 594, 596 (Tex. 2005). Although an order requiring payment of debt may be enforced through legal processes such as execution or attachment, a confinement order premised on failure to pay a debt is void. ***Id.*** If a court finds that certain property at issue currently exists and awards that property as part of the community estate's division, the contemnor is not indebted to the other party, but becomes a constructive trustee who holds that party's assets. ***Id.*** at 597. In such instance, a court may find the holding party in contempt and order confinement for willfully refusing to obey an order to turn over funds to which the other party is legally entitled. ***Id.***

Here, William's payments for the Ford truck are addressed in a section of the divorce decree devoted to the division of the marital estate, specifically, debts to the husband, and the payments are required "as a part of the division of the estate of the parties." *See **id.*** The divorce decree does not indicate that funds to make payments on the Ford truck presently existed, nor does it specify particular community funds from which the payments were to be paid. *See **id.*** Without such identification of existing funds, William cannot be considered a constructive trustee or fiduciary who holds community assets that rightfully belong to Catherine. *See **id.*** Consequently, William's obligation to make payments on the Ford truck is a debt owed to Chrysler Financial. *See **id**.* The fact that the payments were imposed as part of the division of community property does not in itself transform the obligation into one enforceable by coercive contempt. *See **id.***

Because William's obligation to make payments on the Ford truck as ordered in the divorce decree is a debt, the obligation is not enforceable by confinement for contempt. *See **id**.* at 597–98. Thus, the trial court abused its discretion by finding William in contempt and ordering that he be confined for this violation, and suspending commitment contingent on payment of $16,800 to Catherine. That portion of the order for enforcement by contempt constitutes imprisonment for debt, and is void. Accordingly, that portion of William's first issue regarding his being held in contempt for failure to make payments on the Ford truck is sustained.

#### FRAUDULENT RESIDENCE

In his second, third, and fourth issues, William argues that the trial court's order holding him in contempt for fraudulently notifying the court and Catherine that his residence had changed to El

Paso, Texas is void because his action was not in violation of a reasonably specific order. Further, he contends that the trial court's order is void because the underlying divorce decree does not specify compliance in clear and unambiguous terms so that he would know his duties or obligations, and because the motion for enforcement does not state when, how, and by what means he was guilty of the alleged contempt.

**Applicable Law**

It is well established that for a party to be held in contempt for disobeying a court order, the order must spell out the details of compliance in clear, specific, and unambiguous terms so that the party will readily know exactly what duties or obligations the order imposes. *Ex parte Slavin*, 412 S.W.2d 43, 44 (Tex. 1967). The judgment must also order the party to perform the required acts. *Ex parte Brister*, 801 S.W.2d 833, 834 (Tex. 1990). Interpretation of the provisions of the court order in question should not rest upon implication or conjecture. *Ex parte Blasingame*, 748 S.W.2d 444, 446 (Tex. 1988). The allegedly contemptuous acts must be directly contrary to the express terms of the court order. *Id.* On the other hand, the order need not be "full of superfluous terms and specifications adequate to counter any flight of fancy a contemnor may imagine in order to declare it vague." *Id.* (citing *Ex parte McManus*, 589 S.W.2d 790, 793 (Tex. Civ. App.–Dallas 1979, no writ)). Moreover, the order allegedly violated must be strictly construed. *Ex parte Jones*, 160 Tex. 321, 325, 331 S.W.2d 202, 204 (1960). Before a court can punish for contempt not committed in its presence, the accused must have full and complete notification of the subject matter, and the show cause order or other means of notification must state when, how, and by what means the accused has been guilty of the alleged contempt. *Ex parte Carney*, 903 S.W.2d 345, 346 (Tex. 1995). These general rules of law require us to balance the due process rights of those accused of contempt with the power of courts to enforce their orders. *Ex parte Blasingame*, 748 S.W.2d at 446.

Section 156.001 through 156.410 of the Texas Family Code establishes the exclusive procedure for making substantive changes to a divorce decree that provides for the conservatorship, support, or possession of and access to a child. *See* TEX. FAM. CODE ANN. §§ 156.001-.410 (Vernon 2008). Section 156.101 authorizes a court to modify an order that provides for the possession of or access to a child if modification would be in the best interest of the child and the circumstances of the child, a conservator, or other party affected by the order have materially and substantially

5

changed since the earlier of the date of the rendition of the order or the date of the signing of a mediated or collaborative law settlement agreement on which the order is based. TEX. FAM. CODE ANN. § 156.101 (Vernon 2008).

**Analysis**

In the underlying divorce decree in this case, William was ordered to notify Catherine, the trial court, and the state registry of any change in his current residence address. *See* TEX. FAM. CODE ANN. § 105.006(b), (e) (Vernon 2008). In 2006, William informed Catherine and the trial court that his residence address had changed from Palestine, Texas, to El Paso, Texas. However, the trial court found that William's residence "is and was" Palestine, Texas, thereby implicitly finding that William's notice that his residence had changed was false. William contends that the underlying divorce decree simply ordered him to notify Catherine, the trial court, and the state registry of a change of address, which he did.

It is clear from the underlying divorce decree that William had to inform Catherine, the trial court, and the state registry of a change in his residence address. It is equally clear that William was obligated to provide Catherine and the trial court with his actual residence address, not a false one. No other details were necessary in order for William to obey this order. Because the trial court found that William's residence address had not changed, the court did not abuse its discretion in determining that William disobeyed a clear and specific court order by informing Catherine and the trial court that his residence had changed to El Paso, Texas. Thus, the trial court did not abuse its discretion by finding William in contempt and ordering that he be confined for this violation.

As part of his fourth issue, William contends that the motion for enforcement did not state when, how, and by what means he was guilty of the alleged contempt. *Ex parte Carney*, 903 S.W.2d at 346. In her motion for contempt, Catherine stated that William failed to comply with the underlying divorce decree by fraudulently notifying her that his residence address had changed to El Paso, Texas, an eleven hour drive away from her residence, when he continued to reside in Palestine, Texas, one-quarter mile from her residence. She also stated that she was under a court order to pick up the child at William's residence at the beginning of her periods of possession. In Catherine's supporting affidavit, she alleged that William and the child had been departing from William's Palestine, Texas address on the day before her scheduled visitations and driving to El

6

Paso, Texas (an eleven hour drive) for her weekend visitation. Catherine stated that during April and May of 2006, she paid for air flights to and from El Paso, Texas, for her husband to pick up the child in order to exercise her visitation. The child was flown and driven back to Palestine, Texas by Catherine's husband, another seven and one-half hours. These allegations provided sufficient notice to William of when, how, and by what means he was guilty of the alleged contempt.

As part of his second, third, and fourth issues, William contends that the portion of the trial court's order that pertains to modification of the pickup and delivery of the child should be vacated. In the order of enforcement, the trial court ordered that William's commitment be suspended contingent on pickup and delivery of the child, W.C.W., being confined to Anderson County, Texas. In the underlying divorce decree, William was ordered to surrender W.C.W. to Catherine at his residence at the beginning of each period of her possession. Catherine was also ordered to surrender W.C.W. to William at her residence at the end of each period of possession. Further, the trial court ordered that the primary residence of the child, W.C.W., would be the states of Texas, Oklahoma, and Louisiana. The order also prohibited the parties from removing the child from the states of Texas, Oklahoma, and Louisiana for the purpose of changing the primary residence of the child until modified by further order of the court of continuing jurisdiction or by written agreement signed by the parties and filed with the court.

The modification procedure in the Texas Family Code is the exclusive means for making substantive changes to a divorce decree that provides for possession of and access to a child. *See* TEX. FAM. CODE ANN. §§ 156.001-.410. When the trial court limited pickup and delivery of the child to Anderson County, Texas, it made substantive changes to the underlying divorce decree regarding pickup and delivery of the child, and also, potentially, to the states allowed to be the primary residences of the child. Because the trial court's contempt order made substantive changes to the possession of and access to the child as ordered in the underlying divorce decree, the trial court abused its discretion by ordering that pickup and delivery of W.C.W. be confined to Anderson County, Texas.

The portions of William's second, third, and fourth issues relating to modification of the pickup and delivery of the child are sustained. The portions of William's second, third, and fourth issues relating to his being held in contempt for fraudulently notifying Catherine and the trial court

7

that his residence address had changed, and relating to the sufficiency of Catherine's motion for enforcement are overruled.

## ATTORNEY'S FEES

As part of his first, second, third, and fourth issues, William contends that the trial court's order requiring him to pay attorney's fees to Catherine in the amount of $12,000 to suspend his confinement is void. More specifically, he argues that the order violates the Texas constitutional provision against imprisonment for debt. As noted above, the Texas Constitution provides that "[n]o person shall ever be imprisoned for debt." TEX. CONST. art. I, § 18. Prior to 2005, the taxing of attorney's fees in an action for child support was authorized by the Texas Family Code, and the resulting obligation was recognized to fall outside the constitutional prohibition of imprisonment for debt. *In re Estrello*, 130 S.W.3d 391, 394 (Tex. App.–Beaumont 2004, no pet.). But contempt orders that ordered confinement for violating visitation provisions and that allowed suspension of confinement by payment of costs and fees constituted a prohibited imprisonment for debt. *See Ex parte Rosser*, 899 S.W.2d 382, 386 (Tex. App.–Houston [14th Dist.] 1995, no writ).

However, in 2005, the legislature reenacted and amended section 157.167 of the Texas Family Code regarding attorney's fees in an action to enforce possession of or access to a child. Act of May 17, 2005, 79th Leg., R.S., ch. 253, § 1, 2005 TEX. GEN. LAWS 452. As amended, subsection (b) of section 157.167 reads as follows:

> If the court finds that the respondent has failed to comply with the terms of an order providing for the possession of or access to a child, the court shall order the respondent to pay the movant's reasonable attorney's fees and all court costs in addition to any other remedy. If the court finds that the enforcement of the order with which the respondent failed to comply was necessary to ensure the child's physical or emotional health or welfare, the fees and costs ordered under this subsection may be enforced by any means available for the enforcement of child support, including contempt, but not including income withholding.

TEX. FAM. CODE ANN. § 157.167(b) (Vernon 2008). Consequently, payment of attorney's fees assessed against a party who has failed to comply with an order for the possession of or access to a child is now enforceable by contempt. *See Ex parte Rosser*, 899 S.W.2d at 386. Similar to the taxing of attorney's fees in an action for child support, this obligation to pay attorney's fees now falls

outside the constitutional prohibition of imprisonment for debt. *See **In re Estrello***, 130 S.W.3d at 394.

Here, the trial court found that William failed to comply with the terms of the underlying divorce decree providing for possession of or access to W.C.W. and, thus, found that Catherine's attorney's fees in the amount of $12,000 should be assessed against William. *See* TEX. FAM. CODE ANN. § 157.167(b). The court also found that enforcement of the order with which William failed to comply regarding possession of or access to W.C.W. was and is necessary to ensure the child's physical or emotional health or welfare. *See **id.*** Further, the trial court ordered that William's commitment be suspended contingent upon paying Catherine $12,000 in attorney's fees, which sum has been paid into the court's registry. Because of the 2005 amendments to section 157.167, the trial court was authorized to order payment of Catherine's attorney's fees. *See **id.*** Thus, the trial court did not abuse its discretion in ordering William to pay Catherine's attorney's fees to suspend his confinement. Accordingly, those portions of William's first, second, third, and fourth issues regarding payment of Catherine's attorney's fees are overruled.

## CONCLUSION

Because the trial court abused its discretion in ordering William confined unless he paid Catherine $16,800 for the loss resulting from repossession of the Ford truck, and in ordering that pickup and delivery of W.C.W. be confined to Anderson County, Texas, we ***conditionally grant*** William's petition for writ of mandamus in part. We trust that, within ***fifteen (15) days*** from the date of this opinion and corresponding order, the trial court will vacate its April 2, 2008 order insofar as it directs that William be confined unless he pay Catherine $16,800, and that pickup and delivery of W.C.W. be confined to Anderson County, Texas. The writ will issue only if it fails to do so. The trial court shall furnish this court, within the time of compliance with this court's opinion and order, a certified copy of the order evidencing such compliance.

However, based upon our review of the record and the foregoing analysis, we conclude that the trial court did not abuse its discretion in holding William in contempt for fraudulently notifying Catherine and the trial court that his residence address had changed, or in ordering William to pay Catherine $12,000 in attorney's fees to suspend his confinement. Therefore, we ***deny*** William's

9

petition for writ of mandamus regarding those issues.

__BRIAN HOYLE__

Justice

Opinion delivered April 30, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

10