MARY'S OPINION HEADING 



 NO. 12-02-00041-CV



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


SARAH BRAISTAD CUNNINGHAM,
§
 APPEAL FROM THE 14TH

JOHNNY WAYNE HOWARD AND

GARY WAYNE PENN,

APPELLANTS


V.
§
 JUDICIAL DISTRICT COURT OF



LEONORE QUINTANILLA AND

CHRISTINE ESCOBEDO,

APPELLEES
§
 DALLAS COUNTY, TEXAS

 

MEMORANDUM OPINION


 This case had its genesis in a dispute over the parking on Windomere Avenue in the
Winnetka Heights Addition of Dallas, Texas.

 Appellees Leonore Quintanilla ("Quintanilla") and Christine Escobedo ("Escobedo") brought
suit against Gary Penn, D.D.S. ("Penn"), his employee Sarah Cunningham ("Cunningham"), and
Appellees' next door neighbor, Johnny Wayne Howard ("Howard"), asserting causes of action for
private nuisance, intentional infliction of emotional distress, and malicious prosecution. After a
bench trial, the trial court granted judgment in favor of the plaintiff-appellees on all three causes of
action awarding damages and ordering injunctive relief. In eleven issues and six issues, respectively,
Appellants Penn and Cunningham challenge the trial court's judgment. (1) We reverse the judgment
of the trial court and render judgment that plaintiff-appellees take nothing by their suit for intentional
infliction of emotional distress and their suit for malicious prosecution. We affirm the judgment of
private nuisance, partially affirm the injunction ordered to abate the nuisance, and vacate the
injunctive relief pertaining to Appellee Quintanilla's claim of intentional infliction of emotional
distress.


Background


 In November 1994, Appellee Escobedo bought the house located at 205 South Windomere
Avenue in the Winnetka Heights subdivision in Oak Cliff near its intersection with West Jefferson
Boulevard. On the other side of Windomere, Appellant Penn had practiced dentistry since 1981,
although the address of his clinic is 1418 West Jefferson Boulevard. There is no off-street parking
for Penn's clinic, and Penn, his employees, and patients parked on Windomere immediately behind
the clinic. At that time, parking was allowed on both sides of Windomere.

 When she moved in, Escobedo noticed that it was difficult to get in and out of her narrow
driveway in her Toyota Camry if cars were parked on both sides of the street. The roadway had a
high crown which frequently caused the bottom of her car to scrape the street surface when she tried
to enter or leave her driveway. The high curbs and narrow driveways further aggravated the
situation.

 When Escobedo bought the house, Penn and his office manager frequently parked in front
of her house on her side of the street. Escobedo approached Penn about the problem, and he initially
seemed sympathetic, but did nothing to alleviate the problem and continued to park in front of her
house. Escobedo turned to the City of Dallas Department of Transportation in an effort to obtain a
no-parking zone on both sides of the street in front of her house. The Department of Transportation
told her, however, that Penn's signature on the petition would be necessary if parking was to be
restricted on his side of the street. She did not or could not obtain Penn's signature on the petition,
but, in June of 1996, she did succeed in having the area adjacent to her driveway on her side of the
street designated as a no-parking zone. The curb on the clinic side of the street remained a legal
parking zone. Although this improved access somewhat, according to Escobedo, Penn, his staff, and
patients frequently parked in the no-parking area. There matters stood without incident for two-and-a-half years because Escobedo's time was devoted to caring for two sick parents in addition to her
work.

 Appellee Quintanilla moved in with Escobedo as a tenant in January of 1999. She drove a
Nissan 300 ZX, and it was especially difficult for her to enter or leave her driveway without the car's
undercarriage scraping the street or driveway. Early during the summer of 1999, Quintanilla began
leaving notes on cars parked legally across the street from her driveway demanding that they not park
there. On one occasion, she approached one of Penn's patients as he parked there and demanded that
he move. He refused but when he returned to his car after his appointment, his car had been hit with
eggs. On several other occasions during the late summer, other vehicles parked across from the
Escobedo-Quintanilla residence were hit with eggs. Between August 26 and September 22, 1999,
Cunningham, Elbert Turner, and Linda Bell, the office manager, filed four police reports reporting
various acts of vandalism to their vehicles. None of the reports named a suspect.

 Penn's employees then installed a video camera in Penn's office in an effort to identify the
egg thrower. Cunningham reviewed the videotape from October 5 and saw that it showed her car
had been hit by Quintanilla's car. Quintanilla had not left identification at the scene. Cunningham
filed a criminal complaint alleging that Quintanilla had collided with her car, but failed to leave
identification. She also filed a suit on October 15, 1999, alleging $3,400 in damage to her car and
the car belonging to Linda Bell, the office manager, resulting from acts described in the various
police reports including the hit and run. When Quintanilla filed an answer to the civil suit,
Cunningham dismissed her suit. Cunningham also filed a peace bond application alleging
Quintanilla was responsible for the eggings and that she had hit her car without leaving identification
("FLID"). In the application, Cunningham asked that Quintanilla be required to post a peace bond. 
The court set November 8 as the date for hearing the peace bond application. Although the notice
was postmarked October 29, Quintanilla did not receive the notice until November 17.

 In connection with the FLID charge, the court sent notice to Quintanilla dated November 10
to appear and post bond or a warrant would be issued for her arrest. Although the notice was dated
November 10, the envelope containing the notice was postmarked November 15, 1999. It arrived
at Quintanilla's address on November 16, the day after she was arrested on the order of the court for
failure to appear. Quintanilla posted bond on the FLID complaint at approximately 3:00 a.m. on
November 16, and returned home. That afternoon, she was re-arrested because of her failure to
appear at the peace bond hearing. Appellant Cunningham had called the officers to let them know
that Quintanilla could be found at her house. When Quintanilla was arrested, several persons came
out of the clinic to enjoy the event.

 Quintanilla was convicted of the FLID charge. Quintanilla denied ever throwing eggs
although Cunningham testified she had seen a video showing Quintanilla throwing eggs. The tape,
however, was never produced. Later, Appellees admitted it was Escobedo who threw the eggs. 
When the court heard the peace bond application, it declined to require Quintanilla to post bond. 
Quintanilla testified that she incurred a total of $5,225 in legal fees in conjunction with the various
proceedings brought against her, although there is no testimony that these fees were reasonable and
necessary.

 Escobedo and Quintanilla then procured several surveillance cameras of their own in January
of 2000 to watch the street and the dental clinic. During the next year, Escobedo had six flat tires
all caused by screws or nails. The Escobedo-Quintanilla videos showed one instance of Cunningham
"shooting the bird" at Escobedo and Quintanilla as they videotaped her leaving work at the clinic. 
It also recorded Cunningham kicking something off the street in the direction of Escobedo's car
which was parked on the street. That same day, Escobedo had a flat. Although not captured on
video, Quintanilla testified that on one occasion, Cunningham called her a "bitch." During the year
and-a-half of taping, the Escobedo-Quintanilla videos once showed Cunningham walking from her
car across the street to talk to Howard, evidence Appellees claim helps to demonstrate the conspiracy
between Howard and the other appellants to harass and humiliate Quintanilla and Escobedo.

 Quintanilla testified that she suffered severe emotional distress because of Appellants'
conduct, although in her testimony, she related most, if not all, of her anguish to the two arrests in
November of 1999. Ten months later, in September of 2000, Quintanilla incurred $19.75 in medical
expenses for medicine she testified was necessary to treat her emotional distress. There is no
medical evidence that she suffered emotional distress or that this medicine was necessary to treat that
condition.

 Howard's connection to the events seems almost too tenuous to merit discussion. When
Quintanilla moved in, Howard was her next door neighbor. Their relationship apparently got off to
a bad start when Quintanilla spurned his invitation to go out for a drink and help him celebrate his
birthday. Although Howard denied any connection with the dental clinic or its employees, he was
once seen going into the clinic. As we have already mentioned, on another occasion, Cunningham
walked from her car to talk to Howard who was standing in his yard. Howard came out in his yard
to laugh at Quintanilla as she was being arrested. Quintanilla once put her video camera in Howard's
face. On another, Howard thrust a video camera in her face and grabbed at her. Howard maintained
a video camera in his house pointed at the Escobedo-Quintanilla home.

 The trial court found for Escobedo and Quintanilla on all three causes of action asserted,
granting judgment as follows:



 That the Defendants' actions in parking in a legal parking zone located across the street from
the Plaintiffs' driveway constituted a substantial interference with the Plaintiffs' use of their
property located at 205 South Windomere and thereby constituted a private nuisance;
 That the Defendants and their officers, agents, servants, employees, and attorneys, and those
persons in active concert or participation with them, be permanently enjoined from parking
directly across from the driveway of the residence of the Plaintiffs located at 205 South
Windomere, Dallas, Texas;
 That the Defendants are to take necessary precautions to prevent others that are visiting or
working with them from parking directly across from the driveway located at 205 South
Windomere, Dallas, Texas;
 That the Defendant Cunningham committed malicious prosecution by instituting a peace
bond action without probable cause and taking action to have the Plaintiff Quintanilla
arrested on two occasions;
 That the Defendant Cunningham, by repeatedly blocking the driveway of the Plaintiffs'
residence at 205 South Windomere, videotaping the Plaintiffs and their property, and by
making repeated obscene gestures and language, inflicted emotional distress for which the
Plaintiff Quintanilla suffered severe emotional distress;
 That the Defendants Cunningham and Howard be permanently enjoined from videotaping
Plaintiffs and their property, making and using obscene gestures and language towards the
Plaintiffs, and from following the Plaintiffs;
 That the Plaintiff Quintanilla recover from the Defendants Cunningham and Penn, jointly and
severally, the sum of $11,265.35;
 That the Plaintiff Escobedo recover from the Defendants Cunningham and Penn, jointly and
severally, the sum of $753.42;
 That the Plaintiff Quintanilla shall have and recover from Defendant Cunningham the
additional sum of $20,000 as punitive damages;
 That of the sum of $11,265.35 for which Cunningham and Penn are held liable to Plaintiff
Quintanilla, Defendant Howard shall also be jointly and severally liable as to $10,637 of such
amount;
 That the Plaintiff Quintanilla have and recover from the Defendant Howard the sum of
$5,000 as punitive damages.




 In response to a timely request, the trial court filed 78 fact findings and 16 conclusions of
law.


Standards of Review


 A trial court's fact findings are reviewed for legal and factual sufficiency of the evidence
under the same standard applied when reviewing evidence supporting jury findings. Catalina v.
Blasdel, 881 S.W.2d 295, 297 (Tex. 1994). A legal sufficiency review requires the appellate court
to consider only the evidence and inferences that tend to support the finding and disregard all
evidence and inferences to the contrary. See Lenz v. Lenz, 79 S.W.3d 10, 19 (2002). If more than
a scintilla of evidence supports the finding, a no-evidence challenge fails. Formosa Plastics Corp.
USA v. Presidio Engineers, 960 S.W.2d 41, 48 (Tex. 1998). It is also said that the evidence
presented, viewed in the light most favorable to the prevailing party, must permit the logical
inference that the jury must reach. See Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 26 (Tex.
1994). In reviewing a factual sufficiency challenge, the reviewing court must consider and weigh
all of the evidence, both that which supports and that which is contrary to the fact finder's
determination, and set aside the verdict only if the evidence that supports the finding is so weak that
the verdict is clearly wrong and unjust. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996); Garza v.
Alviar, 395 S.W.2d 821, 823 (Tex. 1965); see also W. Wendell Hall, Standards of Review in Texas,
34 St. Mary's L.J. 1, 172 (2002).

 A trial court's conclusions of law are reviewed de novo as legal questions, and the reviewing
court affords no deference to the lower court's decision. Quick v. City of Austin, 7 S.W.3d 109, 116
(Tex. 1998). Conclusions of law will not be reversed, unless they are erroneous as a matter of law. 
See Mercer v. Bludworth, 715 S.W.2d 693, 697 (Tex. App.-Houston [1st Dist.] 1986, writ ref'd
n.r.e.).


Nuisance


 In her first and second issues presented, Appellant Cunningham (2) challenges the legal and
factual sufficiency of the evidence supporting the fact findings underlying the trial court's finding
of private nuisance.

 In her second issue, she contends that the evidence does not support Appellees' recovery on
the theory of private nuisance. In his first issue, Appellant Penn also contends that the evidence does
not support the trial court's finding of private nuisance.

 "A private nuisance is defined to be anything done to the hurt, or annoyance of the lands,
tenements or hereditaments of another." Burditt v. Swenson, 17 Tex. 489, 502 (1856) (quoting 3
William Blackstone, Commentaries *215). "And by consequence it follows, that if one does
any other act, in itself lawful, which, being done in that place, necessarily tends to damage another's
property, it is a nuisance; for it is incumbent on him to find some other place to do that act, where
it will be less offensive." Id. But in order to constitute a private nuisance, the condition or acts of
the defendant must interfere substantially with the use and enjoyment of the plaintiff's land by
causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use
it. Nugent v. Pilgrim's Pride Corp., 30 S.W.3d 562, 575 (Tex. App.-Texarkana 2000, pet. denied). 
Comment c of the Restatement (Second) of Torts § 821F (1965) states as follows:


 By significant harm is meant harm of importance, involving more than slight inconvenience or petty
annoyance. The law does not concern itself with trifles, and there must be a real and appreciable
invasion of the plaintiff's interest before he can have an action for either a public or private nuisance.



Restatement (Second) of Torts § 821F cmt. c (1965). Comment d goes on to state:


 When an invasion involves a detrimental change in the physical condition of land, there is seldom any
doubt as to the significant character of the invasion. When, however, it involves only personal
discomfort or annoyance, it is sometimes difficult to determine whether the invasion is significant. 
The standard for determination of significant character is the standard of normal persons or property
in the particular locality. If normal persons living in the community would regard the invasion in
question as definitely offensive, seriously annoying, or intolerable, then the invasion is significant. 
If normal persons in that locality would not be substantially annoyed or disturbed by the situation, then
the invasion is not a significant one, even thought the idiosyncracies of the particular plaintiff may
make it unendurable to him. Rights and privileges as to the use and enjoyment of land are based on
the general standards of normal persons in the community and not on the standards of the individuals
who happen to be there at the time.


Restatement (Second) of Torts § 821F cmt. d (1965).

 There is a great deal of evidence that it is difficult to get in and out of Escobedo's drive when
cars are parked on the street opposite her residence. There is some evidence that because of the
Winnetka Heights Historical Area restriction, Escobedo cannot widen her drive, that Quintanilla was
once late to an examination because she could not get out of her driveway, and also evidence that
Appellees' cars as well as Appellant Cunningham's vehicle have suffered some damage as a result
of the parking problem on the street in front of Escobedo's house. The record also supports the
underlying findings that Cunningham continued to park across from Appellees' driveway and has
also encouraged vendors and patients of the clinic to do so.

 Appellants point out that several factors other than cars legally parked across the street make
entry into the Escobedo driveway more difficult. Because of the high crown on the roadway, a car
will scrape the street surface or "bottom out" whether there are cars across the street or not. 
Appellants' driveway is very narrow and the curbs are high. Escobedo conceded in her testimony
that access to her driveway was much easier after she sold her Camry and bought a small SUV. Exit
and entry in Quintanilla's Nissan 300 ZX sports car presents a special challenge. Appellants
complain that there is no evidence establishing how much narrower, if any, the street in question is
than other Dallas residential streets. They argue that a finding that parking in a legal parking zone
across the street from the Escobedo driveway constituted a substantial "interference" with Appellees'
use of the property would serve as a precedent to preclude on-the-street parking generally.

 There is evidence that others have complained to Penn about the parking on Winnetka, but
apparently no one had petitioned the city to change the on-street parking situation for at least thirty
years. Although one cannot ordinarily acquire a prescriptive right to maintain a nuisance, Pilgrim's
Pride, 30 S.W.3d at 575, the fact that on the street parking has been permitted for at least twenty-five
years without incident is evidence supporting a conclusion that the condition is not seriously
offensive, or intolerable to a person of ordinary sensibilities. Moreover, entry into and exit from the
Escobedo driveway became easier after the establishment of a no-parking zone in front of the
Escobedo house on her side of the street.

 There is, however, more than a scintilla of evidence supporting the trial court's finding of
nuisance. Considering all the evidence, we also conclude that the finding is not so against the great
weight and preponderance of the evidence as to be manifestly wrong and unjust.

 Cunningham's issues one and two and Penn's issue one are overruled.



Intentional Infliction of Emotional Distress


 In her fourth issue, Cunningham contends that the evidence does not support the trial court's
finding that Quintanilla is entitled to recover under the theory of intentional infliction of emotional
distress. Appellant Penn's ninth issue challenges the same conclusion.

 In order to recover for the tort of intentional infliction of emotional distress, the plaintiff must
prove the following four elements:



 the defendant acted intentionally or recklessly,
 the conduct was extreme and outrageous,
 the actions of the defendant caused the plaintiff emotional distress, and
 the emotional distress suffered by the plaintiff was severe.




Twyman v. Twyman, 855 S.W.2d 619, 621 (Tex. 1993). In recognizing the tort of intentional
infliction of emotional distress in Texas, our supreme court adopted the language of the
Restatement (Second) of Torts § 46 (1965), which stated that liability for outrageous conduct
should be found "only where the conduct has been so outrageous in character, and so extreme in
degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly
intolerable in a civilized community." Id. The test for determining what conduct is extreme and
outrageous is a subjective one. Twyman, 855 S.W.2d at 629 (Hecht, J., concurring and dissenting). 
That an action is intentional, malicious, or even criminal does not, standing alone, mean that it is
extreme or outrageous. Brewerton v. Dalrymple, 997 S.W.2d 212, 215 (Tex. 1999). Insensitive or
rude behavior is not necessarily outrageous behavior. Gaspard v. Beadle, 36 S.W.3d 229, 238 (Tex.
App.-Houston [1st Dist.] 2001, pet. denied). Mere insults and indignities do not rise to the level of
extreme or outrageous conduct. Haynes v. Boone, L.L.P. v. Chason, 81 S.W.3d 307, 309 (Tex.
App.-Tyler 2001, pet. denied). The severity of the plaintiff's emotional distress is a separate element
which must be proven, but it is not a factor in determining whether the defendant's conduct was
extreme and outrageous. Id. at 311.

 Courts must determine as a threshold matter whether the defendant's conduct may reasonably
be regarded as so extreme and outrageous as to permit recovery. Brewerton, 997 S.W.2d at 216. 
The threshold requirement for what constitutes extreme and outrageous conduct is a difficult one to
meet. (3) In making this determination, the courts consider the context and the relationship between
the parties. GTE Southwest, Inc. v. Bruce, 998 S.W.2d 605, 612 (Tex. 1999).

 Quintanilla attributes her emotional distress and mental anguish to (1) Appellants' action in
continuing to park across the street from her home on Windomere Street making entry and exit into
her driveway more difficult, (2) Appellant Cunningham's obscene gestures directed at her, (3)
Cunningham's calling her a "bitch," and (4) Appellants' repeated videotaping of her. There is also
evidence that during the period of escalating tension over the parking problem, Appellees Quintanilla
and Escobedo had their tires slashed or punctured and bird seed spread in their yard to attract
grackles. There is no evidence or finding linking Appellants to the tire damage or bird seed,
although the trial court awarded damages for the replacement of Appellees' tires. Appellee
Quintanilla also argues that Cunningham's conduct in instigating her arrests and prosecution
constituted extreme and outrageous conduct that caused her severe emotional distress.

 "It is well recognized . . . that a course of harassing conduct may support liability for
intentional infliction of emotional distress. [citations omitted] In such cases, courts consider the
totality of the conduct in determining whether it is extreme and outrageous." GTE Southwest, Inc.,
998 S.W.2d at 615. "Repeated harassment . . . may compound the outrageousness of incidents,
which, taken individually, might not be sufficiently extreme to warrant liability." Id. (citing Boyle
v. Wenk, 378 Mass. 592, 392 N.E.2d 1053, 1056 (1979)). We are required, however, to view the
events within their context taking into consideration the relationship of the parties.

 The videotaping by Cunningham commenced only after Cunningham's car and the vehicles
belonging to other dental clinic employees were hit by eggs while parked across the street from
where Quintanilla lived with Escobedo. Appellees themselves engaged in videotaping Cunningham
and other dental clinic employees over a one-and-a-half-year period. The lewd gesture complained
of consisted of one incident when Cunningham "shot the bird" at Quintanilla while Quintanilla stood
on her porch videotaping Cunningham and other clinic employees or patients as they drove away. 
Cunningham repeated the gesture on one other occasion and on one occasion called Quintanilla a
"bitch" to her face. Although Quintanilla argues that we should infer that her flat tires and the bird
seed in her yard were part of a pattern of harassment carried on by Appellants, there is no evidence
connecting any of the appellants to these events. Although the existence of a legal parking zone
across the street made it somewhat more difficult to enter the narrow drive at the Escobedo house,
there is no evidence that Appellants "blocked" her drive. Finally, it is clear from her argument that
Quintanilla was most keenly distressed when she was twice arrested and hauled off in handcuffs in
connection with court proceedings instigated by Cunningham. A claim for intentional infliction of
emotional distress cannot be maintained when the risk that emotional distress will result is merely
incidental to the commission of another tort. Standard Fruit & Vegetable Co. v. Johnson, 985
S.W.2d 62, 68 (Tex. 1998). These prosecutions also form the basis of Quintanilla's malicious
prosecution claim. Quintanilla, however, was first arrested for failure to appear and post a bond to
answer the charge of failing to leave identification after her car collided with or bumped
Cunningham's car. There is no evidence that Cunningham had Quintanilla arrested. She was later
convicted of the offense. Quintanilla was also arrested for failure to appear at the peace bond
hearings. Cunningham did not request her arrest. The court ordered it. Cunningham told the police
where Quintanilla was because Cunningham knew the police had been looking for her. There is no
evidence to support the finding that Cunningham requested Quintanilla's arrest for failure to appear
at the peace bond hearing. The court ordered her arrest after she failed to appear as summoned. 
When a hearing was held a month later, the court declined to require a peace bond. In the context
of this case, it is impossible to conclude that Cunningham was without cause when she asked that
Quintanilla be required to post a peace bond.

 Even if the arrests are considered, we conclude that the record fails to demonstrate that the 
acts complained of met the threshold requirement of extreme and outrageous conduct considering
the relationship between the parties and the context in which the events occurred. There is
insufficient evidence to sustain the findings necessary to Quintanilla's recovery under the theory of
intentional infliction of emotional distress. Appellant Cunningham's issue number four and
Appellant Penn's issue number nine are sustained.


Malicious Prosecution


 Cunningham, in her fifth and sixth issues, and Penn in his fourth issue contend there is no
evidence supporting the trial court's conclusion that Cunningham's conduct in initiating
Quintanilla's prosecution for failure to leave identification and in filing a peace bond application
constituted malicious prosecution.

 A plaintiff in a malicious criminal prosecution claim must prove


 1) the commencement of a criminal prosecution against the plaintiff;

 2) causation (initiation or procurement) of the action by the defendant;

 3) termination of the prosecution in the plaintiff's favor;

 4) the plaintiff's innocence;

 5) the absence of probable cause for the proceedings;

 6) malice in filing the charge; and

 7) damage to the plaintiff.



Richey v. Brookshire Grocery Co., 952 S.W.2d 515, 517 (Tex. 1997). Cunningham initiated the
FLID complaint against Quintanilla. Quintanilla, however, was convicted of the offense. Since the
prosecution did not terminate in Quantanilla's favor, it cannot serve as the basis for a malicious
prosecution action. As we have already noted, Quintanilla's arrest in connection with this complaint
was ordered by the judge because of Quintanilla's failure to appear. There is absolutely no evidence
that Cunningham was responsible for Quintanilla's failure to receive notice to appear or that
Cunningham acted to procure her arrest. 

 Cunningham also filed an application on October 28, 1999, asking that Quintanilla be
required to post a peace bond. Quintanilla did not appear at the peace bond hearing, apparently also
because of lack of notice, and the court ordered her arrest. When Quintanilla did not appear at the
initial hearing, Cunningham informed the police on November 16 that Quintanilla was at her home
where shortly thereafter the police arrested her. On December 20, 1999, the court heard the peace
bond application but declined to order Quintanilla to post a peace bond. 

 In order to recover in a suit alleging malicious prosecution of a civil claim, the plaintiff must
establish


 1) the institution or continuation of civil proceedings against the plaintiff;

 2) by or at the insistence of the defendant;

 3) malice in the commencement of the proceeding;

 4) lack of probable cause for the proceeding;

 5) termination of the proceeding in the plaintiff's favor; and

 6) special damages.



Texas Beef Cattle Co. v. Green, 921 S.W.2d 203, 207 (Tex. 1996). The trial court concluded that
"Cunningham's actions in filing the peace bond action and requesting and obtaining the arrest of
Plaintiff Quintanilla were with malice and without probable cause and constitute malicious
prosecution."

 Appellants argue that, contrary to the trial court's finding, the evidence conclusively
establishes that Cunningham did have probable cause to file the application for a peace bond. There
is an initial presumption that a defendant who initiated a prosecution acted reasonably and in good
faith and therefore had probable cause. Ellis County State Bank v. Keever, 888 S.W.2d 790, 794
(Tex. 1994). The focus of the inquiry is not on whether all of Cunningham's allegations were
correct, but on whether her action in instituting the proceeding was reasonable. See American
Derringer Corp. v. Bond, 924 S.W.2d 773, 787 (Tex. App.-Waco 1996, no writ). The question is
not what the facts actually were, but rather what the defendant reasonably believed the facts to be. 
Richey, 952 S.W.2d at 517; Metzger v. Sebek, 892 S.W.2d 20, 42 (Tex. App.-Houston [1st Dist.]
1994, writ denied).

 When the relevant facts are undisputed, probable cause is a question of law; otherwise it is
a mixed question of law and fact. Richey, 952 S.W.2d at 518. Although we believe the relevant
facts bearing on the reasonableness of Cunningham's action are conclusively established, it would
be inaccurate to characterize the surrounding circumstances as undisputed. Therefore, we will
review Appellant's complaint as a legal sufficiency challenge to the evidence supporting the court's
finding of an essential negative fact, the fact of no probable cause. In reviewing a finding of no
probable cause, we inquire whether the evidence, viewed in the light most favorable to Quintanilla,
permits the logical inference that Cunningham had no probable cause to file the peace bond
application. See Lyons v. Millers Cas. Ins. Co. of Texas, 866 S.W.2d 597, 600 (Tex. 1993).

 Before she filed the application, Cunningham knew that Quintanilla had run into her car
without leaving identification. On at least five occasions, cars parked across the street from
Appellees' residence were hit with eggs. Quintanilla approached one of the egging victims, a clinic
patient, and demanded he move his car. He did not move his car, and when he came back out of the
clinic he found his car had been hit by eggs. Quintanilla denies throwing the eggs, and Appellees
maintain that it was her landlady, Escobedo, who threw the eggs. Nevertheless, the record reflects
the impasse over the parking began to seriously escalate after Quintanilla moved into Escobedo's
home. Although Escobedo was apparently the egg thrower, Quintanilla was the most overtly
aggressive of the two, and it was reasonable that Cunningham should believe that Quintanilla was
the vandal responsible. Although the evidence that bears on the existence of probable cause must
be viewed in the light most favorable to Quintanilla, it must also be regarded from the standpoint of
a reasonable person acting under the circumstances which faced Cunningham when she filed the
peace bond application. The evidence, viewed in that light, does not permit the logical inference that
Cunningham had no probable cause to file the peace bond application. Cunningham's issues number
five and six and Penn's issue number four are sustained.


Damages for Nuisance


 In her eighth issue, Cunningham complains that Escobedo is not entitled to recover the sum
of $753.42 in damages for Appellants' maintenance and creation of a private nuisance. We agree. 
The damages found were as follows: $169.74 damage to her vehicle, $30.00 to fix flat tires, and
$553.68 for new tires. We agree that even if such damages were authorized for private nuisance,
there is absolutely no evidence that Appellants caused the damage by slashing the tires or putting
nails or screws in them. Neither is there any evidence that any of the appellants slashed Quintanilla's
tires. There are no other damage findings referable to the suit for private nuisance. Cunningham's
issue number eight is sustained.


Injunctive Relief


 In its judgment, the trial court ordered as follows:


 IT IS THEREFORE ORDERED ADJUDGED AND DECREED that Defendants Cunningham, Penn,
Allen, Maldonado, Howard, and their officers, agents, servants, employees, and attorneys, and those
persons in active concert or participation with them who receive actual notice of this judgment by
personal service or otherwise, are permanently enjoined from parking directly across from the
driveway for the residence at 205 S. Windomere, Dallas, Texas.


 IT IS FURTHER ORDERED ADJUDGED AND DECREED that for so long as Defendants
Cunningham, Penn, Allen, and Maldonado, own or work at the Dental Clinic, and so long as
Defendant Howard lives next door to 205 S. Windomere, such Defendants shall take necessary
precautions to prevent others visiting or working with them, from parking directly across from the
residence driveway.


 IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Defendants Cunningham and
Howard are permanently enjoined from videotaping Plaintiffs and their property, from making and
using obscene gestures and language towards Plaintiffs, and from following Plaintiffs.



 Cunningham in her tenth issue and Penn by his third and tenth issues challenge the trial
court's grant of injunctive relief. Appellants maintain that Appellees are not entitled to equitable
relief because they have an adequate remedy at law to cure the parking problem. They also contend
that the second part of the injunction requiring them to take "necessary precautions" to prevent
certain others from parking directly across from Appellees' driveway is too vague and uncertain to
be enforceable. Finally, they argue that the third part enjoining Cunningham and Howard from
videotaping Appellees on their property and using lewd or obscene gestures toward Appellees is
improper because there is no imminent injury, and the acts complained of have been discontinued. 

 To obtain an injunction, it is necessary to establish (1) a wrongful act, (2) imminent harm,
(3) irreparable injury, and (4) the absence of any adequate legal remedy. In re City of Dallas,, 977
S.W.2d 798, 804 (Tex. App.-Fort Worth 1998, orig. proceeding). An adequate remedy at law is one
that is as complete, practical, and efficient to the prompt administration of justice as is equitable
relief. Universal Health Servs. v. Thompson, 245 S.W.2d 570, 577 (Tex. App.--Austin 2000, no
pet.) One suffers an irreparable injury if the injured party cannot be "adequately compensated in
damages or the damages cannot be measured by any pecuniary standard." Texas Indus. Gas v.
Phoenix Metallurgical Corp., 828 S.W.2d 529, 533 (Tex. App.--Houston [1st Dist.] 1992, no writ). 
The injury sought to be avoided must be substantial. Bigowski v. Russell, 718 S.W.2d 16, 21 (Tex.
App.-Tyler 1986, writ ref'd n.r.e.).

 For an order of the court to be enforceable by contempt, the order must spell out the details
of compliance in clear, specific, and unambiguous terms so that the party will readily know exactly
what duties or obligations the order imposes. Ex parte Slavin, 412 S.W.2d 43, 44 (Tex. 1967). The
judgment must also order the party to perform the required acts. Ex parte Brister, 801 S.W.2d 833,
834 (Tex. 1990). Interpretation of the provisions of the court order in question should not rest upon
implication or conjecture. Ex parte Blasingame, 748 S.W.2d 444, 446 (Tex. 1988). Moreover, the
order allegedly violated must be strictly construed. Ex parte Jones, 160 Tex. 321, 324, 331 S.W.2d
202, 204 (1960). 

 After considering the provisions of the injunction in light of the above-stated principles, we
conclude that Appellees have established their right to injunctive relief in abatement of the nuisance
found by the trial court. Therefore, we affirm the injunctive relief granted in the judgment as
follows:


 IT IS THEREFORE ORDERED ADJUDGED AND DECREED that Defendants Cunningham, Penn,
Allen, Maldonado, Howard, and their officers, agents, servants, employees, and attorneys, and those
persons in active concert or participation with them who receive actual notice of this judgment by
personal service or otherwise, are permanently enjoined from parking directly across from the
driveway for the residence at 205 S. Windomere, Dallas, Texas.



However, we vacate the following portion of the injunction for lack of specificity:


 IT IS FURTHER ORDERED ADJUDGED AND DECREED that for so long as Defendants
Cunningham, Penn, Allen, and Maldonado, own or work at the Dental Clinic, and so long as
Defendant Howard lives next door to 205 S. Windomere, such Defendants shall take necessary
precautions to prevent others visiting or working with them, from parking directly across from the
residence driveway.



Because we have determined that Appellee Quintanilla's recovery for intentional infliction of
emotional distress is unsupported by the evidence, we also vacate that part of the injunction relating
to that cause of action, granted in the judgment as follows:


 IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Defendants Cunningham and
Howard are permanently enjoined from videotaping Plaintiffs and their property, from making and
using obscene gestures and language towards Plaintiffs, and from following Plaintiffs.



Cunningham's issue number ten and Penn's issues number three and ten are sustained in part and
overruled in part.


Conclusion


 The trial court's finding of private nuisance is affirmed. The portion of the trial court's
judgment ordered in abatement of the nuisance and permanently enjoining Appellants and others
from parking directly across from Appellees' residence is affirmed. All other provisions granting
injunctive relief are vacated. Otherwise, the judgment is reversed and judgment rendered that
Appellees take nothing by their suit. Because of our disposition of Appellants' issues, Appellees' 
motion for contempt against Appellant Howard is overruled as moot.



 BILL BASS 

 Justice




Opinion delivered February 4, 2004.

Panel consisted of Worthen, C.J., DeVasto, J., and Bass, Retired Justice, Twelfth Court of Appeals, Tyler, sitting by
assignment.




























(PUBLISH)
1. By motion granted on August 8, 2002, Appellant Johnny Wayne Howard adopted the briefs of Appellants
Penn and Cunningham.
2. Because Appellant Howard has adopted the briefs filed by Appellants Penn and Cunningham, he joins in
their presentation of issues.
3. For examples of just how difficult this threshold is to cross, see Haynes & Boone, L.L.P., 81 S.W.3d at
312-13, and the cases collected therein.