In re CHOICE! ENERGY, L.P., E. Javier Loya, OTC Energy Holdings, L.P., Choice! Power, L.P. and Choice! Energy Services Retail, L.P., Relators.

No. 14–10–00359–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 21, 2010.

Jonathan Michael Hyman, James J. Ormiston, Houston, for relators.

Howard Lynn Steele, Mo Taherzadeh, Houston, for real party in interest.

Panel consists of Justices BROWN, SULLIVAN, and CHRISTOPHER.

## OPINION

KENT C. SULLIVAN, Justice.

On April 23, 2010, relators, Choice! Energy, L.P., E. Javier Loya, OTC Energy Holdings, L.P., Choice! Power, L.P. and Choice! Energy Services Retail, L.P., filed a petition for writ of mandamus in this Court. *See* Tex. Gov't Code Ann. § 22.221 (Vernon 2004); *see also* Tex.R.App. P. 52. In the petition, relators ask this Court to compel the Honorable Steven E. Kirkland, presiding judge of the 215th District Court of Harris County, to set aside his February 22, 2010 contempt order. We conditionally grant the petition.

### BACKGROUND

In 1998, Choice! Natural Gas sued Amerex Power, Ltd., Amerex Natural Gas I, Ltd. (collectively, "Amerex"), Gina Musachia, and Jon T. Mulvihill, asserting claims related to the Amerex's solicitation and recruitment of Musachia and Mulvihill, who were former Choice! Natural Gas employees. Choice! Natural Gas had employment agreements with Musachia and Mulvihill, containing covenants not to compete. The parties settled the case and, on November 6, 1998, the trial court signed an agreed permanent injunction and final judgment.

The November 6, 1998 judgment contains reciprocal paragraphs prohibiting the solicitation and recruitment of the parties' current or former employees. The November 6, 1998 judgment states with respect to Choice! Natural Gas:

CHOICE!, along with all entities controlled by or under the common control

with CHOICE! (which CHOICE! hereby stipulates it is authorized to bind to this Agree Permanent Injunction and Final Judgment), including CHOICE! Harbour, Inc., Janvin Co., E.J. Loya, Inc., CHOICE! Energy Consulting, Inc., CHOICE! Energy (NE), Limited Partnership and CHOICE! Power & Light, Inc. (hereinafter collectively the "CHOICE! Companies"), together with their respective shareholders, directors, officers, partners, agents, employees, servants, representatives and all persons in active concert or participation with them, and all other persons who receive actual notice of this order, shall cease, desist and refrain from, either directly or indirectly, on behalf of either themselves or any other person or entity, *engaging in any soliciting for employment, or otherwise recruiting for employment, the current or former employees of the Amerex Companies* if the employment resulting from such solicitation or recruitment would result in a violation of any provision contained in said employee's preexisting employment agreement with the Amerex Companies, provided, however, that the CHOICE! Companies will not be prohibited from hiring any former employee of the Amerex Companies after the 548th day following that employee's termination of employment with the Amerex Companies.[1]

On November 24, 2009, almost ten years after the 1998 judgment became final, four of Amerex Brokers, LLC's employees—Allen Schoephoerster, Ben Nigh, Martin Holmes, and Bram Taylor (collectively, the "Brokers")—resigned. Each of them signed employment contracts with Choice! Power, L.P. on December 1, 2009.

On December 22, 2009, Amerex filed a motion in the 1998 lawsuit for contempt

and to enforce the agreed permanent injunction and final judgment against relators. In the motion, it alleged that relators violated the terms of the permanent injunction by soliciting or recruiting the Brokers. Amerex asked that relators be held in contempt for violating the permanent injunction and be restrained from employing the Brokers. Amerex also noted that the Brokers were subject to employment agreements with Amerex that contain covenants not to compete. However, it has not sued the Brokers for breach of their employment contracts.

The trial court held an evidentiary hearing on January 29, 2010, and signed the contempt order on February 22, 2010. The trial court found relators in contempt of the agreed permanent injunction and final judgment, and ordered them "to purge themselves of their civil contempt—*to wit* to refrain from employing the [Brokers] in violation of the [Brokers'] employment agreements with Amerex during the pendency of the [Brokers'] covenants not to compete in their Amerex employment contracts." The trial court further stated that relators' "failure to purge themselves of their contempt will subject them to monetary penalties and a holding of criminal contempt."

## STANDARD OF REVIEW

█ Because no restraint is involved, a petition for writ of mandamus is relators' only possible relief. *In re Long,* 984 S.W.2d 623, 625 (Tex.1999) (orig.proceeding) (per curiam); *Rosser v. Squier,* 902 S.W.2d 962 (Tex.1995) (orig.proceeding) (per curiam). To be entitled to the extraordinary relief of a writ of mandamus, the relator must show that the trial court abused its discretion and there is no ade-

1. Emphasis added.

quate remedy by appeal. *In re Long*, 984 S.W.2d at 625.

■ Constructive contempt is the violation of a written order outside the trial court's presence. *Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex.1995) (orig.proceeding). Contempt is not to be presumed, but rather is presumed not to exist. *Deramus v. Thornton*, 160 Tex. 494, 333 S.W.2d 824, 830 (1960) (orig.proceeding). While we cannot weigh the evidence supporting the trial court's contempt finding in this mandamus proceeding, we can determine whether the contempt order is void because there is no evidence of contempt. *In re Long*, 984 S.W.2d at 626–27.

### ANALYSIS

### The Brokers Are Not Subject to the Judgment

■ Relators contend that the 1998 judgment does not apply to the Brokers because they were not "current" or "former" Amerex employees at the time the judgment was entered on November 6, 1998. We agree. An agreed judgment should be construed in the same manner as a contract. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 422 (Tex. 2000). Ordinary principles of contract law require us to determine the true intent of the parties as expressed in the agreed judgment. *Keys v. Litton Loan Servicing, L.P.*, No. 14–07–00809–CV, 2009 WL 4022178, at *2 (Tex.App.-Houston [14th Dist.] Nov. 24, 2009, no pet.) (mem.op.) (citing *Anzilotti v. Gene D. Liggin, Inc.*, 899 S.W.2d 264, 267 (Tex.App.-Houston [14th Dist.] 1995, no writ)). We examine the writing as a whole in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). We give terms their plain, ordinary, and generally accepted meaning un-

less the contract shows the parties used them in a technical or different sense. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.1996). In construing a contract, the court may not rewrite the contract or add to its language. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex.2003).

■ Amerex argues that we should construe the word "current" in the 1998 judgment in a way so that its effect is not limited to 1998 employees but would extend to individuals employed at the present time. Amerex argues that the only significance of the November 6, 1998 date is that it is date the trial court signed the judgment; Amerex claims that the date otherwise has no bearing on the interpretation of the judgment. We disagree. The judgment cannot be interpreted in a temporal vacuum. The November 6, 1998 date provides the point at which the parties' rights, duties, and remedies were defined.

Amerex further argues that the parties' intent to bind "future" employees is evidenced by the following factual recitations in the 1998 judgment:

> That the parties have agreed, and by their executions set forth below, do hereby agree, to respect the employment agreements of the other and not to aid or abet, directly or indirectly, current or former employees of the other in breaching or violating the employees' obligations under such agreements.

> * * *

> That in exchange for the injunctive relief set forth below, each party has agreed, and by their executions set forth below do hereby agree, that they may amend and/or modify their present and/or *future employment agreements* at any time and in any manner without the

prior notice or approval of any other party.[2]

Contrary to Amerex's assertion, however, these paragraphs address employment contracts of those employees who were current or former employees of Choice! or Amerex in 1998. They do not address employment contracts of "future" employees who had not yet been hired.[3]

In fact, "future" employees are not referenced anywhere in the judgment. When a contract specifically mentions some, but not all, members of a certain class, as here, we must assume the parties intended to exclude other members that were not referenced. *See CKB & Assocs., Inc. v. Moore McCormack Petroleum, Inc.,* 734 S.W.2d 653, 655 (Tex.1987) (applying the contract principle of *unius est exclusion alterius* ). The inclusion of "current" and "former" employees, but not "future" employees, supports an inference that the parties intended to exclude "future" employees from those employees subject to the November 6, 1998 agreed judgment. *See id.* Applying these well-established rules of contract construction, we conclude that the Brokers are not subject to the November 6, 1998 judgment.

A contempt order is void when it purports to punish the contemnor for conduct that is beyond the scope of the trial court's prior order or decree. *Deramus,* 333 S.W.2d at 830. Because the Brokers are not subject to the November 6, 1998 agreed judgment, there is no evidence that relators violated it. In the absence of any evidence that relators violated the prior

agreed judgment, trial court's February 22, 2010 order finding relators in contempt is void. *See In re Long,* 984 S.W.2d at 626–27.

## This Original Proceeding is Not Moot

Amerex argues that this original proceeding is moot. On August 17, 2010, Amerex filed a notice of waiver in the trial court that it has explicitly waived the right to complain about any failure by relators to comply with the contempt order between February 22, 2010 and May 24, 2010, when the covenants not to compete in the Brokers' employment agreements expired. Amerex, however, has not waived its right to seek damages related to relators' alleged violations of the agreed judgment.

The mootness doctrine limits courts to deciding cases in which an actual controversy exists between the parties. *Fed. Deposit Ins. Corp. v. Nueces County,* 886 S.W.2d 766, 767 (Tex.1994). Generally an appeal is moot when the court's action on the merits cannot affect the rights of the parties. *VE Corp. v. Ernst & Young,* 860 S.W.2d 83, 84 (Tex.1993) (per curiam).

Amerex seeks only to have relators' petition for writ of mandamus dismissed as moot. According to relators, however, Amerex has threatened to file a separate lawsuit against one or more of the relators asserting claims related to the hiring of the Brokers. Because Amerex has not waived its right to seek damages, it is still poised to use the contempt order

---

**2.** Emphasis added.

**3.** Notably, these factual recitations *precede,* and are not subsequently repeated in, the portion of the court's decree that *actually decides* the parties' respective rights as to solicitation and recruitment of "current" and "former" employees. *See Crider v. Cox,* 960 S.W.2d 703, 705 (Tex.App.-Tyler 1997, writ

denied) (explaining that factual recitations do not actually determine the parties' rights and interests). Therefore, these paragraphs should not be considered as part of the trial court's decision. *See Ellis v. Mtge. & Trust, Inc.,* 751 S.W.2d 721, 724 (Tex.App.-Fort Worth 1988, no writ).

in support of any subsequent suit for damages. Relators will suffer the adverse consequences of the void contempt order unless it is set aside.[4] Therefore, this court's decision on the pending petition will affect the parties' rights, and Amerex's "waiver" does not render relators' petition moot.[5]

**Laches Does Not Bar Mandamus Relief**

 Amerex contends that relators' petition is barred by laches because they waited some 60 days after the trial court signed the contempt order to file their petition for writ of mandamus.[6] Although mandamus is not an equitable remedy, its issuance is influenced by equitable principles. *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 676 (Tex.2009) (orig.proceeding) (per curiam). A delay in the filing of a petition for writ of mandamus may waive the right to mandamus unless the relator can justify the delay. *Id.*

 Laches, however, is not applicable when the order subject to the mandamus proceeding is void. *In re Chester*, 309 S.W.3d 713, 718 (Tex.App.-Houston [14th Dist.] 2010, orig. proceeding). Since we hold that the order in question in this case

is void, the doctrine of laches similarly does not apply here. *Id.*

Moreover, between the time the trial court signed the contempt order and relators filed their petition in this Court, they filed a motion requesting that the trial court vacate the contempt order. *See In re Perritt*, 992 S.W.2d 444, 446 (Tex.1999) (orig.proceeding) (per curiam) ("A party's right to mandamus relief generally requires a predicate request for some action and a refusal of that request."). The trial court denied relators' motion to vacate on March 22, 2010, and relators' counsel did not learn of the trial court's ruling until April 8, 2010. Accordingly, the record does not reflect that relators unjustifiably delayed filing their petition in this court.

### CONCLUSION

We conclude that the trial court's February 22, 2010 order finding relators in contempt is void.[7] Accordingly, we conditionally grant the petition for writ of mandamus and direct the trial court to vacate its February 22, 2010 order. The writ will issue only if the trial court fails to act in

---

**4.** *See In re Salgado*, 53 S.W.3d 752, 757–58 (Tex.App.-El Paso 2001, orig. proceeding) (holding protective order against father was not moot, even though it would expire before appellate court could issue opinion, because it carried collateral consequence-father's sister had used period of custody to argue she had standing to file suit affecting parent-child relationship); *In re M.E.G.*, 48 S.W.3d 204, 208 n. 5 (Tex.App.-Corpus Christi 2000, no pet.) (holding appeal of enforcement order was not moot, even thought appellant was released from custody with no stipulations on appellant's remaining free, because appellant may suffer collateral consequences from still valid order); *Ex parte Young*, 724 S.W.2d 423, 425 (Tex.App.-Beaumont 1987, orig. proceeding) (holding application for writ of habeas corpus was not moot, even though trial court released relator from jail, because he may still suffer collateral consequences from still valid order).

**5.** We have previously rejected Amerex's contention that the expiration of the Brokers' covenants not to compete on May 24, 2010 rendered relators' petition moot.

**6.** Amerex asserts that the 60–day delay in filing the petition is unreasonable because the covenants not to compete in the Brokers' employment contracts expired on May 24, 2010. However, as previously noted, we have already rejected Amerex's position that relators' petition is moot based on the expiration of the covenants not to compete.

**7.** Because we have found that the Brokers are not subject to the agreed judgment and, therefore, there is no evidence that relators violated the judgment, it is not necessary to address the other issues raised in relators' petition.

accordance with this opinion. We further deny Amerex's motion to dismiss this original proceeding as moot.