

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00172-CV

IN RE EMILY ASLAM                                                                RELATOR

------------

ORIGINAL PROCEEDING

------------

## OPINION

------------

Relator Emily Aslam seeks mandamus relief against the Honorable Ralph Walton, Judge of the 355th Judicial District Court of Hood County. Emily complains of the trial court's November 10, 2010 "Order on Motion for Enforcement," which holds her in contempt for allegedly violating a provision of the court's "Agreed Final Decree of Divorce." We conditionally grant the writ of mandamus.

### Background Facts

Through the agreed final decree, Emily and Jamil Aslam divorced on June 3, 2010. Emily and Jamil are the parents and joint managing conservators of one

child, Josiah.[1]  Under the decree, each parent has the right to receive information from the other parent about the health of Josiah and the right to access Josiah's medical records.  Emily must provide health insurance for Josiah, and when Josiah is with Jamil, Emily must provide any forms necessary for Josiah to be provided health care.

The trial court required Emily and Jamil to, within thirty days of the decree, "execute . . . all necessary releases pursuant to the Health Insurance Portability and Accountability Act (HIPAA) . . . to permit the other conservator to obtain health-care information regarding [Josiah]."  The trial court also ordered the parents to "designate the other conservator as a person to whom protected health information regarding [Josiah] may be disclosed whenever the party executes an authorization . . . pursuant to . . . HIPAA."

On August 26, 2010, Jamil filed a motion for enforcement of the divorce decree.  In the motion, Jamil alleged that Emily "wholly failed *to execute the necessary HIPAA releases* to permit Jamil . . . to obtain health care information regarding the child as is required by [the decree]."  [Emphasis added.]  This allegation was labeled "Violation 17."[2]  Jamil asked the trial court to hold Emily in

---

[1]Emily, who serves overseas in the United States Armed Forces, has the exclusive right to designate Josiah's primary residence.

[2]Jamil also alleged eighteen other violations, but since the trial court denied Jamil's motion on each of those allegations, we will not address them. We will also not address Emily's motion for enforcement, which the trial court also denied.

2

contempt and possibly confine her. Emily answered the motion by stating that she had "completed the actions requested."

The parties appeared for an evidentiary hearing on Jamil's motion in September 2010. Emily testified that she had executed a proper HIPAA release and had placed it in Josiah's medical record. She said that she had not provided the release to Jamil.

Jamil testified that Emily had not communicated with him with regard to Josiah's health.[3] Jamil said that he had not received a HIPAA release from Emily and that she was trying to thwart his ability to get information about Josiah, which has been her pattern.

At the end of the hearing, the trial court found Jamil's allegation regarding the non-execution of a HIPAA release to be true, held Emily in contempt, assessed punishment at three days' confinement, and suspended imposition of that punishment for thirty days, conditioned on Emily delivering the HIPAA release to Jamil by 5 p.m. on October 18, 2010. On November 10, 2010, the trial court signed an Order on Motion for Enforcement. The order contained the same contempt finding and punishment.[4]

---

[3]Emily said that she had received one e-mail from Jamil and that she had replied to the e-mail by informing Jamil about Josiah's daycare provider. She also testified that Jamil has the contact information for Josiah's doctors because Jamil "used to live in Okinawa."

[4]Thus, the November 10 order required Emily to deliver the HIPAA release by October 18. The parties approved the order as to form. The mandamus record does not disclose whether the HIPAA document has since been provided

3

In January 2011, the trial court entered findings of fact and conclusions of law. One of the findings states, "[Jamil] then proceeded with prosecuting Violation 17, alleging [Emily's] willful failure to *execute* HIPAA releases to permit [Jamil] to obtain health care information as required by the parties' Decree. [Emily] testified, in two separate statements, that she did not *provide* HIPAA releases as required." [Emphasis added.] A conclusion of law states, "Upon being asked about [Emily's] failure to follow the provisions regarding the HIPAA release, [Emily] herself admitted that she had failed to follow the orders. As such, [Jamil] was successful in proving his claim."[5]

On May 16, 2011, Emily filed a petition for writ of mandamus in this court. In the petition, she contends, among other arguments, that Jamil's motion for enforcement alleged only that she failed to execute a HIPAA form, not that she failed to deliver one; thus, the motion did not provide her with notice of why she could have been held in contempt. She also argues that she simply did not violate the divorce decree because the express terms of the decree require her to execute the form, not deliver it, and interpretation of a contempt order should not rest on implication. Jamil contends that the enforcement order is not

---

by Emily to Jamil. The record also does not show whether any consequence came from Emily's possible failure to provide the document by October 18.

[5]During the hearing, Emily testified that her failure to provide the HIPAA release to Jamil would be a violation of the divorce decree "[i]f that's what [the decree] says."

4

improper because in reading all of the language of the divorce decree, Emily knew that she had to deliver the HIPAA form to him, not just execute it.

### The Propriety of the Contempt Order

Mandamus relief is proper only to correct a clear abuse of discretion when there is no adequate remedy by appeal. *In re Columbia Med. Ctr. of Las Colinas*, 290 S.W.3d 204, 207 (Tex. 2009) (orig. proceeding). A trial court clearly abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). With respect to the resolution of factual issues or matters committed to the trial court's discretion, we may not substitute our judgment for that of the trial court unless the relator establishes that the trial court could reasonably have reached only one decision and that the trial court's decision is arbitrary and unreasonable. *Id.* at 839–40. This burden is a heavy one. *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (orig. proceeding). We give deference to a trial court's factual determinations, but we review the trial court's legal determinations de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding). A trial court abuses its discretion if it incorrectly interprets or improperly applies the law. *In re Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 642–43 (Tex. 2009) (orig. proceeding); *Walker*, 827 S.W.2d at 840.

Contempt orders are not reviewable by appeal; therefore, if a trial court abuses its discretion by holding someone in contempt, there is no adequate

remedy by appeal, and the second prong of mandamus review is satisfied. *In re Office of Attorney Gen. of Tex.*, 215 S.W.3d 913, 916 (Tex. App.—Fort Worth 2007, orig. proceeding).[6] In an original proceeding challenging a trial court's contempt order, the relator bears the burden of showing that the order is void. *See In re Coppock*, 277 S.W.3d 417, 418 (Tex. 2009) (orig. proceeding). An order is void if it is beyond the power of the court to enter it or if it deprives the relator of liberty without due process of law. *Id.* "To be enforceable by contempt, an order must set out the terms of compliance in clear and unambiguous terms. Moreover, a person cannot be sentenced to confinement unless the order unequivocally commands that person to perform a duty or obligation." *Id.* (citation omitted).

A motion for enforcement must, "in ordinary and concise language," identify the provision of the order allegedly violated, state the manner of the respondent's alleged noncompliance, and state the relief requested by the movant. Tex. Fam. Code Ann. § 157.002 (West 2008). An enforcement order must include the language of the provisions of the order for which enforcement was requested, the acts or omissions that are the subject of the order, and the manner of the respondent's noncompliance. *Id.* § 157.166 (West 2008).

The provision of the trial court's divorce decree that Jamil cited within Violation 17 of his motion for enforcement requires Emily to "execute" a HIPAA

---

[6]Where a contemnor is confined, a contempt order may be challenged by a writ of habeas corpus. *See id.*

6

release "to permit [Jamil] to obtain health-care information" regarding Josiah. Emily testified that she executed the release and placed it in Josiah's medical record, and Jamil did not present evidence to the contrary. The provision quoted above does not unequivocally require Emily to deliver the HIPAA form to Jamil. Thus, the trial court's finding of fact that Emily did not "provide HIPAA releases as required" is in error and does not comport with the allegation of Violation 17.[7]

As the supreme court has explained,

> For a person to be held in contempt for disobeying a court decree, the decree must spell out the details of compliance in clear, specific and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed upon him. Interpretation of the provisions of the court order in question should not rest upon implication or conjecture. The allegedly contemptuous acts must be directly contrary to the express terms of the court order.

*Ex parte Blasingame*, 748 S.W.2d 444, 446 (Tex. 1988) (orig. proceeding) (citation omitted); *see Ex parte Chambers*, 898 S.W.2d 257, 260 (Tex. 1995) (orig. proceeding); *see also Ex parte Jones*, 160 Tex. 321, 325, 331 S.W.2d 202, 204 (1960) (orig. proceeding) (explaining that an order that is subject to a contempt dispute must be strictly construed). Emily's allegedly deficient act— failing to deliver the HIPAA form to Jamil—is not directly contrary to the part of

---

[7]Other parts of the divorce decree could be construed to require Emily to send the HIPAA release to Jamil. For example, the decree requires Emily to deliver all "forms necessary for [Josiah] to be provided health care through all facilities available to the child as a dependent of a United States Armed Forces member." But Violation 17 did not expressly allege that Emily violated this provision or other similar provisions; thus, Violation 17 did not give Emily notice that she could be held in contempt for violating those provisions.

7

the trial court's order that was quoted within Violation 17, particularly when that language is given a strict construction.

Jamil correctly observes that the divorce decree requires Emily to execute the HIPAA form for the purpose of permitting "the other party to obtain health-care information." Thus, Jamil argues that Violation 17 of his motion for enforcement "complain[ed] not merely about the failure to execute, but that this did not permit [Jamil] to obtain health care information." But Jamil did not present evidence that he had attempted to obtain records from Josiah's medical providers but had not been able to do so because Emily had not executed, deficiently executed, or improperly filed the HIPAA release.[8] He did not show that he tried to get Josiah's medical records but was unable to because he did not personally have a copy of the HIPAA release. It was Jamil's burden to prove in the trial court that Emily should be held in contempt. *See Ex parte McIntyre*, 730 S.W.2d 411, 417 (Tex. App.—San Antonio 1987, orig. proceeding). He did not meet this burden. The trial court had no basis to determine that Emily executed the release in a fashion that prevents Jamil's access to Josiah's health care information. The trial court therefore also had no reason to conclude that

---

[8]Jamil said that Josiah's school has refused to give him records because he was informed that "Emily did not allow that." But Jamil did not state the same with regard to Josiah's medical providers. Jamil also testified that Emily has resisted giving him various requested information about Josiah, but the purpose of the HIPAA release is to allow Jamil to obtain medical information from third parties, not from Emily.

8

delivery of the HIPAA release was necessary to achieve the purpose of the part of the divorce decree quoted in Violation 17.[9]

We hold that Violation 17 of Jamil's motion for enforcement did not give Emily notice of the factual allegation that she was eventually held in contempt for, and we conclude that the contempt order is therefore void.[10] *See Ex parte Brister*, 801 S.W.2d 833, 835 (Tex. 1990) (orig. proceeding); *Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex. 1979) (orig. proceeding) ("Due process of law requires that the constructive contemnor be given 'full and complete notification' and a reasonable opportunity to meet the charges by way of defense or explanation. . . . A contempt judgment rendered without such notification is a nullity."); *In re Mann*, 162 S.W.3d 429, 432 (Tex. App.—Fort Worth 2005, orig. proceeding). We hold therefore that the trial court necessarily abused its discretion by signing the contempt order. *See Walker*, 827 S.W.2d at 839.[11]

---

[9]Jamil argues, "Obviously, [he] would need to receive the HIPAA Form to obtain the health-care information." The record does not contain evidence supporting this assumption.

[10]Because we hold that the trial court's order is void, we need not address Jamil's argument that the petition for writ of mandamus was untimely. Although laches may preclude the issuance of a writ of mandamus in some circumstances, laches does not preclude a challenge to a void order. *See In re Choice! Energy, L.P.*, 325 S.W.3d 805, 810 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding).

[11]We do not in any way condone Emily's actions or omissions as found by the trial court, which do not appear to comport with the spirit of the agreed decree of divorce, nor to promote the best interest of the child as contemplated by the decree in which Emily and Jamil are named joint managing conservators. *See* Tex. Fam. Code Ann. § 153.002 (West 2008).

## Conclusion

We conditionally grant the writ of mandamus. We are confident that the trial court will vacate its November 10, 2010 "Order on Motion for Enforcement." A writ will issue only if it fails to do so.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

DAUPHINOT, J. filed a concurring opinion.

DELIVERED: July 5, 2011



# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-11-00172-CV

IN RE EMILY ASLAM                                                    RELATOR

----------

## ORIGINAL PROCEEDING

----------

## CONCURRING OPINION

----------

I cannot join the dicta and expression of personal opinion found in the majority's eleventh footnote; otherwise, I join the majority opinion.

LEE ANN DAUPHINOT
JUSTICE

DELIVERED: July 5, 2011