# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-23-00748-CV

---

**In re Max Paul Kozinn**

---

### FROM THE 250TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-21-007135, THE HONORABLE MADELEINE CONNOR, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Relator Max Paul Kozinn filed this mandamus proceeding after the trial court signed an order on a petition for enforcement of orders included in an Agreed Final Decree of Divorce (the Decree) dissolving the marriage of Max Paul Kozinn and Kinneret Kozinn.[1] The order found that Max committed 23 violations of the Decree's provisions; held him in contempt for each violation; and ordered that, as punishment, he pay a fine of $500 for each violation, totaling $11,500. The court ordered Max to pay the fine to Kinneret, who was ordered to deposit it into "an existing or new college fund (529 plan) controlled solely by [Kinneret] for the benefit of" Max and Kinneret's minor child. The court also ordered Max to pay attorneys' fees of $47,138.50 to Kinneret's legal counsel. We conclude that the trial court abused its discretion as to a portion of the order, and that Max has no adequate remedy by appeal. We therefore conditionally grant the writ of mandamus in part and deny it in part.

---

[1] Because the parties share a surname, we will refer to them by their given names for clarity.

The Decree contains the following provisions relevant to this mandamus proceeding. First, the Decree ordered Max and Kinneret to adhere to the rules contained in the "Children's Bill of Rights"[2] as well as to (1) minimize the child's exposure to harmful familial conflict by not making negative remarks about the other conservator or the other conservator's family; (2) be respectful to the other conservator and the other conservator's family in the presence of the child; and (3) communicate with each other in a polite, civil, and cooperative manner and to attempt to resolve disputes concerning the child with dignity and by focusing on the best interest of the child. Second, the Decree ordered Max and Kinneret to "complete an age-appropriate four-hour online parenting class no later than May 22, 2022" and provide to the other parent a certificate of completion of the class. Third, the Decree ordered Max and Kinneret to "execute and deliver to the other party any and all [] tax returns, and other documents, and do or cause to be done any other acts and things as may be necessary or desirable to [e]ffect the provisions and purposes of" the Decree, one of which was to ensure that each party receive half of any refund of taxes paid for any year during the parties' marriage.

In November 2022, Kinneret filed a petition for enforcement of the Decree, which she amended in May 2023. Kinneret alleged that Max had violated the Decree by failing to comply with the Children's Bill of Rights provisions of the Decree on 19 different occasions. The petition describes in detail each incident, including the conduct Kinneret asserted violated the Children's Bill of Rights.[3] Kinneret also alleged that Max had violated the Decree by failing

---

[2] The Children's Bill of Rights is a list of rules for conservators to follow to ensure that children do not suffer from parental conflicts. *See* "Children's Bill of Rights" located at https://www.traviscountytx.gov/dro/children-rights (last visited June 3, 2024).

[3] For example, Kinneret alleged that "On September 4, 2022, during a morning exchange, [Max] inappropriately asked [their child], 'Shouldn't mommy give me a hug?' in the

to "enroll in and complete an age-appropriate four-hour online parenting class on or before May 22, 2022" and failed to obtain a certificate of completion of the class and provide it to Kinneret as ordered in the Decree. Finally, Kinneret alleged that, on three occasions, Max refused to sign an amended federal income tax return for 2020 and thereby prevented them from receiving a tax refund of $2,287.00.[4] Kinneret requested that the court impose on Max a $500 fine for each violation of the Decree and order him to pay to her legal counsel the attorneys' fees she incurred in securing legal services necessary to enforce and protect her rights and the rights of their minor child.

After a hearing, the trial court signed an order finding Max guilty of several separate violations of the Decree, including fourteen violations of the Children's Bill of Rights provisions in the Decree; two violations related to his failure to enroll in and complete an age-appropriate four-hour online parenting class on or before May 22, 2022; and three violations related to his refusal to sign an amended federal income tax return for 2020. The court assessed a fine of $500 per violation, totaling $11,500,[5] which it ordered payable to Kinneret to deposit into an existing or new college fund (529 plan) for the benefit of Max and Kinneret's minor

_____

presence of [Kinneret] as an effort to use [their child] as a 'middleman' to communicate with [Kinneret]." One of the rules included in the Children's Bill of Right is that "neither parent will use the child as a 'middleman' by using the child to communicate with the other parent on inappropriate topics." As another example, Kinneret alleged that Max "aggressively yelled" at her in their child's presence during an exchange and then "stormed off and angrily put [their child]" in his car in violation of the Decree's directive that Max and Kinneret communicate with each other in a polite, civil, and cooperative manner.

[4] There were additional allegations of conduct violative of the Decree, but because Max does not challenge the court's findings of contempt arising out of those violations, we do not describe them here.

[5] The total fine included $2,000 in fines related to four unchallenged violations of the Decree's order.

child. The court ordered Max to pay Kinneret's legal counsel $47,138.50 in attorneys' fees. Max then filed this petition for writ of mandamus. In five issues, Max asserts that the trial court abused its discretion by (1) holding him in contempt for violating the provisions of the Decree regarding the parents' conduct toward each other, including compliance with the Children's Bill of Rights, (2) holding him in contempt for failing to take an age-appropriate parenting class, (3) holding him in contempt for failing to sign an amended tax return, (4) ordering him to pay the contempt fines to a private litigant, and (5) ordering him to pay Kinneret's attorneys' fees.

Contempt orders not involving confinement may be reviewed only by writ of mandamus. *In re Long*, 984 S.W.2d 623, 625 (Tex. 1999) (orig. proceeding) (per curiam). To be entitled to mandamus relief, a relator generally must demonstrate that the trial court clearly abused its discretion and that the relator has no adequate remedy by appeal. *In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *See In re Cerebus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). Contempt of court is broadly defined as disobedience to or disrespect of a court by acting in opposition to its authority. *In re Luther*, 620 S.W.3d 715, 721 (Tex. 2021) (orig. proceeding) (per curiam); *Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex. 1995) (orig. proceeding). A judgment for constructive contempt[6] must be based on a violation of a court order. *Ex parte Lee*, 704 S.W.2d 15, 17 (Tex. 1986) (orig. proceeding).

---

[6] Contempt occurring outside the court's presence, as alleged here, is constructive contempt. *In re Reece*, 341 S.W.3d 360, 365 (Tex. 2011) (orig. proceeding).

4

There are two forms of contempt: civil and criminal. A criminal contempt order is punitive in nature and is an exertion of the court's inherent power to punish a party for "some completed act which affronted the dignity and authority of the court." *Ex parte Johns*, 807 S.W.2d 768, 771 (Tex. App.—Dallas 1991, orig. proceeding) (quoting *Ex parte Werblud*, 536 S.W.2d 542, 545 (Tex. 1976) (orig. proceeding)). In criminal contempt proceedings, the contemnor is being punished for his improper actions "and no subsequent voluntary compliance on the part of the defendant can enable him to avoid punishment for his past acts." *Ex parte Johns*, 807 S.W.2d at 771. The distinguishing feature of criminal contempt is that the penalty is unconditional. *Id.* A judge can impose a fine or imprisonment or both in a criminal contempt order. *Id.* Civil contempt, by contrast, is remedial, prospective, and coercive. *See In re Reece*, 341 S.W.3d at 365. A judgment that provides that the contemnor is to be committed or fined unless and until he performs the affirmative act required by the court's order is a civil contempt order. *In re Mott*, 137 S.W.3d 870, 874 (Tex. App.—Houston [1st Dist.] 2004, orig. proceeding). For example, an order that provides that a party is to be committed, but suspends that sentence conditioned on the party's timely compliance with an order to deposit a sum certain in the court's registry, is a coercive civil contempt order. *See In re Mittelsted*, 661 S.W.3d 639, 648 (Tex. App.—Houston [14th Dist.] 2023, orig. proceeding). Release from civil contempt may be procured by compliance with the trial court's order. *See In re Bannwart*, 439 S.W.3d 417, 421 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding). Here, the court's order is a criminal contempt order because it fines Max for past conduct and the punishment is unconditional. *See Ex parte Johns*, 807 S.W.2d at 771. For a court to impose a fine for criminal contempt for violation of a court order, there must be proof beyond a reasonable doubt of: (1) a

reasonably specific order; (2) a violation of the order; and (3) the willful intent to violate the order. *Ex parte Chambers*, 898 S.W.2d at 259.

In his first issue, Max asserts that the trial courts abused its discretion in finding him in contempt of the Decree because, with respect to alleged violations of the court's order directing Max and Kinneret to conduct themselves in a manner that minimizes the child's exposure to harmful familial conduct and adhere to the provisions of the Children's Bill of Rights, Kinneret's motion for enforcement did not provide him with adequate notice of which provisions of the court's order he had violated. Contempt proceedings are quasi-criminal in nature, and the contemnor is entitled to procedural due process throughout the proceedings. *In re Davis*, 305 S.W.3d 326, 330 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding). Before a court can punish an alleged contemnor for constructive contempt, due process requires that the accused have full and complete notification of the contemptuous act. *Ex parte Carney*, 903 S.W.2d 345, 346 (Tex. 1995) (orig. proceeding). A constructive contemnor "must have full and complete notification of the subject matter, and the show cause order or other means of notification must state when, how, and by what means the defendant has been guilty of the alleged contempt." *In re Parks*, 264 S.W.3d 59, 62 (Tex. App.—Houston [1st Dist.] 2007, orig. proceeding). A contempt order rendered without adequate notice is void. *Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex. 1979) (orig. proceeding) ("A contempt judgment rendered without . . . notification is a nullity."). In an original proceeding challenging a contempt order, the relator has the burden to show that the order is void. *See In re Aslam*, 348 S.W.3d 299, 302 (Tex. App.—Fort Worth 2011, orig. proceeding) (citing *In re Coppock*, 277 S.W.3d 417, 418 (Tex. 2009)).

To assure full and complete notification, Texas Family Code section 157.002 sets out the pleading requirements for enforcement motions. *See* Tex. Fam. Code § 157.002. This section provides that motions for enforcement must, in ordinary and concise language, identify the provision of the order allegedly violated and sought to be enforced and state the manner of the respondent's alleged noncompliance. *Id.* § 157.002(a). Having reviewed Kinneret's motion for enforcement, we conclude that it complies with these notice requirements. The motion incorporates the language from the Decree ordering the parties to conduct themselves in a manner that minimizes the exposure of the child to harmful familial conduct, to be respectful to the other conservator in the presence of the child, and to adhere to the 29 provisions of the Children's Bill of Rights. The motion also includes each of the 29 provisions of the Children's Bill of Rights and, as to each alleged violation, includes the date of the alleged violation, the precise manner in which Max is alleged to have violated the Decree's directives regarding the parents' conduct and communications with each other, including direct quotes and details regarding Max's alleged violative conduct. Kinneret's motion for enforcement was sufficiently specific in notifying Max of "when, how, and by what means" she alleged he had violated the Decree to satisfy Max's due process right to adequate notice. We also disagree with Max's contention that the court's order on Kinneret's motion for enforcement fails to comply with section 157.166 of the Texas Family Code. That section provides that an enforcement order must include, in ordinary and concise language, the provisions of the order for which enforcement was requested, the acts or omissions that are the subject of the order, and the manner of the respondent's noncompliance. *See id.* § 157.166(a). Having reviewed the order, we conclude that it complies with the requirements of section 157.166 by reciting which provisions of the Decree Kinneret alleges Max violated and the conduct that the court found to

be noncompliant with its order. Finally, we disagree with Max's argument that the Decree itself is ambiguous such that interpretation of its provisions requires implication or conjecture, rendering it insufficiently unambiguous to be enforced by contempt. The Decree's provision about parental conduct are not ambiguous and do not require conjecture to ascertain their meaning. For example, the Decree directs the parents to "not make negative remarks about the other conservator" and to "communicate with each other in a polite, civil, and cooperative manner." It further includes 29 specific prohibitions including that "no conservator shall deny the Child reasonable use of the telephone to place and receive calls with the other parent" and that the conservator shall not "engage in abusive, coarse, or foul language, which can be overheard by the Child." We conclude that the Decree sets forth the terms of compliance in sufficiently specific and unambiguous language to be enforced by contempt. We overrule Max's first issue.

In his second issue, Max asserts that the court abused its discretion by finding him in contempt of the provision of the Decree requiring that he take an "age-appropriate" four-hour online parenting class. Max contends that, because the order does not "contain the name or details for a specific class," it is too ambiguous to be enforced by contempt. There was evidence in the record that Max attended a "coparenting" class, but Kinneret asserted that a "coparenting" class focuses on different issues than does an "age-appropriate parenting class," which addresses child rearing—such as potty training and hygiene. We agree that the order that Max attend "an age-appropriate parenting class" is too ambiguous to support a contempt finding based on Max's having instead attended a "coparenting" class. On this record, we agree that the two findings of contempt for failing to comply with the ambiguous parent-education provision of the Decree constituted and abuse of discretion. *See In re Janson*, 614 S.W.3d 724, 727 (Tex. 2020) (orig.

8

proceeding) ("A trial court necessarily abuses its discretion if it holds a person in contempt for violating an ambiguous order."). We conclude that Max is entitled to the requested relief with regard to the two contempt findings related to parent education.[7] We sustain Max's second issue.

In his third issue, Max asserts that the trial court abused its discretion in finding him in contempt for failing to sign an amended tax return and in ordering Max to sign an amended return. Our jurisdiction extends only to the contempt finding based on his refusal to sign an amended tax return.[8] Max asserts that the trial court abused its discretion by holding him in contempt for failing to sign an amended tax return for tax year 2020 because, in his view, there is no provision in the Decree that requires him to do so. We disagree. The Decree plainly provides that Max and Kinneret are required to "execute and deliver to the other party any and all [] documents, and do or cause to be done any other acts and things as may be necessary or desirable to [e]ffect the provisions and purposes" of the Decree. The Decree also provides that each party is entitled to one-half of any refund of tax for any year after the parties' marriage through December 31, 2021. Signing an amended tax return is execution of a document and commission of an act that effects the Decree's purpose of ensuring that Max and Kinneret each receive one-half of any tax refund for tax year 2020, a year of their marriage. Max's refusal to

---

[7] The relevant violations are identified in the trial court's order as Violation 5 and Violation 6.

[8] The portion of the trial court's order directing Max to sign an amended federal income tax return is neither a civil nor a criminal contempt order. This portion of the order may be, and has been, challenged by a direct appeal pending in this Court, *see Kozinn v. Kozinn*, No. 03-23-00378-CV, and therefore his complaint does not meet the requirement that he not have an adequate remedy by appeal to be entitled to mandamus relief.

do so constitutes a violation of this requirement and the trial court did not abuse its discretion in finding him in contempt. We overrule Max's third issue.

In his fourth issue, Max argues that the trial court abused its discretion by ordering him to pay the $11,500 in fines for contempt to Kinneret, who was ordered to deposit the fines into a college fund for the benefit of their minor child. Monetary fines for contempt are not payable to a private litigant. *See*, *e.g.*, *Cannan v. Green Oaks Apartments, LTD.*, 758 S.W.2d 753, 754 (Tex. 1988) (per curiam) ("This court has earlier held that in a contempt proceeding a private party cannot recover damages for a violation of a court order.") (citing *Edrington v. Pridham*, 65 Tex. 612, 617 (1886)); *Cadle Co. v. Lobingier*, 50 S.W.3d 662, 668-69 (Tex. App.—Fort Worth 2001, pet. denied) ("A contempt fine is not payable to a private litigant."). The trial court abused its discretion when it ordered Max's fine for contempt of court payable to Kinneret for the benefit of their child. We sustain Max's fourth issue.

In his fifth issue, Max challenges the court's attorneys' fee award. Max asserts that the award was not authorized by statute or by a contract between the parties. Kinneret counters that Max has an adequate remedy by a direct appeal of the attorneys' fee award, which he has filed and which is currently pending in this Court as No. 03-23-00378-CV, *Kozinn v. Kozinn*. The contempt order assessed attorneys' fees as a money judgment, not a contempt sanction. The court's order states that "judgment is awarded to" Kinneret's legal counsel "in the amount of $47,138.50 for reasonable attorney's fees, expenses, and costs incurred by" Kinneret. This Court has jurisdiction to address non-contempt money judgments on direct appeal. *See Marcus v. Smith*, 313 S.W.3d 408, 415 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (court of appeals has jurisdiction over direct appeal that does not challenge court's holding or refusing to hold party in contempt of court.). Because Max has an adequate remedy by appeal, we will not

entertain his complaints regarding the attorneys' fee award in this mandamus proceeding. We overrule Max's fifth issue.

**CONCLUSION**

We conditionally grant the petition for writ of mandamus in part and direct the trial court to strike from the order Violation 5 and Violation 6, along with the $1,000 in fines associated with those two contempt findings. We also direct the court to modify its order to make the remaining fines for contempt payable to the court. The writ will not issue unless the trial court fails to comply with this Court's directives.

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Triana and Kelly
  Concurring and Dissenting Opinion by Justice Triana

Filed:  June 6, 2024

11